[No. 15098.    Department One.—December 1, 1894.]

SIMON KULLMAN ET AL., APPELLANTS, v. JULIUS SIMMENS, RESPONDENT.

PURCHASE OF STOCKS ON MARGIN — NATURE OF DEALINGS BETWEEN BROKER AND CUSTOMER.—Whether a transaction or a series of transactions between a broker and his customer for the purchase of stocks that are not immediately delivered, or of which an immediate delivery is not contemplated, is in contravention of the provisions of article IV, section 26, of the constitution is a question of fact to be determined in each particular case, and the circumstances under which the transaction is had, and the conduct of the parties in reference thereto, are of great influence in determining this fact.

ID.—FINDING AS TO NATURE OF TRANSACTIONS.—A finding of the trial
court that such transactions were in contravention of the provisions of
article IV, section 26, of the constitution, will not be disturbed by the
appellate court when the evidence as to the nature of the transactions
is conflicting.

ID.—DESIGNATION OF TRANSACTIONS BY PARTIES.—The designation given
to the transactions by the parties themselves is not conclusively deter-
minative of their character or of their legality.

APPEAL from a judgment of the Superior Court of
the City and County of San Francisco, and from an
order refusing a new trial.

This action was brought to recover from the defend-
ant the sum of four thousand four hundred and two
dollars and eighty-five cents, for moneys advanced and
paid out by the plaintiffs for and at the request of the
defendant. The plaintiffs were stockbrokers dealing in
the Pacific Stock Exchange of San Francisco. The
defendant was their customer, and, from the early part
of January until the 5th of May, 1891, gave them
orders and instructions to purchase and sell for him
and his account shares of the capital stock of mining
companies in and through the Pacific Stock Exchange.
Upon these orders the plaintiffs advanced the necessary
funds, and the defendant repaid them their outlays and
commissions on the same or the following day, in cases
of purchases, and took up the shares purchased, and in
cases of sales deposited the stock with the plaintiffs and
received from them the moneys realized on such sales
less commissions. On or about the fifth day of May,
1891, the defendant directed the plaintiffs to buy for
him, and for his account, eight hundred and fifty shares
of the capital stock of Consolidated Virginia Mining
Company, at the same time telling them that he would
leave the city that day, and return in five days and take
up the stock. Plaintiffs bought the eight hundred and
fifty shares, advanced the necessary amount therefor,
received the stock in their possession, and held the same
for account of the defendant; the five days elapsed, the
defendant did not pay for the stock, and, after due notice

to the defendant, the plaintiff sold the stock for account of the defendant, at a loss of four thousand four hundred and two dollars and eighty-five cents, including commissions. This is the amount sued for. On the sixteenth day of January, 1881, the defendant, at the request of said plaintiffs, executed and delivered to plaintiffs a written contract, which is in the words and figures following, to wit:

"SIMON KULLMANN AND WM. LOWENBURG, STOCK
"BROKERS."

"Will buy and sell stock, for cash, with the express understanding that all stocks purchased, or which are held by them as collateral, may be sold by them in their discretion, at any time, without any demand upon the customer for the payment of the balance of account then due, or without any demand whatever, and without any notice of the time or place of said sale, and without any notice whatever, at the Pacific Stock and Exchange Board, at any regular and informal session thereof, or at private sale, whenever the lowest market value of such stock or stocks is less than twice the amount of such balance of account due them by the customer, or whenever, in their judgment, the stock is liable to depreciate so as to make the security insufficient; and, if such sale or sales do not cover such balance or account, then the undersigned will pay the remainder with interest, rate of interest to be one and a half per cent per month, compounding monthly. When stocks are borrowed or sold on account of the undersigned, Simon Kullmann & Wm. Lowenburg have the right to buy in such stocks without any demand upon, and without any notice to, the customer, on street, or in said Pacific Stock and Exchange Board at any regular or informal session thereof, whenever they think they have not sufficient money or security on hand to protect themselves against loss. Kullmann & Lowenburg shall not be required to keep on hand the identical certificates of stock purchased or pledged, but it shall be sufficient if they have the

same number of shares of stock to deliver when properly deliverable and properly called for. All customer's stock on hand shall be held as collateral for the customer's entire account. If, at any time, the funds in the hands of Kullmann & Lowenburg, belonging to the customer, are insufficient to pay the purchase price of any stock purchased for him, then Kullmann & Lowenburg, if they see fit so to do, may advance the deficiency, and the money so advanced shall immediately become due and payable from the customer to them, and if not immediately paid without demand they shall have the right, at any time after such advance, to sell any or all stock in their hands, without notice or demand upon said customer to repay such advance, such sale to be made in the manner hereinabove provided. All stocks purchased or held under this agreement may be placed absolutely in the name of any person selected by Kullmann & Lowenburg. This agreement shall not be varied by any oral agreement, but can only be varied by a written agreement indorsed hereon, and subscribed by the parties hereto. The foregoing terms and conditions do and shall apply to and govern all future transactions and accounts with the undersigned, unless varied by a subsequent written agreement."

The court found that the stock in question was purchased by the plaintiffs under and pursuant to the terms and conditions of said contract, with the understanding and agreement that they were not to be delivered at the time of purchase, but, on the contrary, were to be delivered at some future time when the sum of money due plaintiffs from the defendant thereon should be paid by him, and that all the transactions had in pursuance of the contract were in violation of the provisions of section 26 of article IV of the constitution. Judgment was rendered in favor of the defendant, from which, and from an order refusing a new trial, the plaintiffs appeal. The further facts are stated in the opinion of the court.

*Wal. J. Tuska,* for Appellants.

*Cobb & Loefler,* and *Scrivner & Schell,* for Respondent.

HARRISON, J.—The questions involved in this appeal have been determined adversely to the contention of the appellant in the cases of *Cashman* v. *Root,* 89 Cal. 373; *Wetmore* v. *Barrett,* 103 Cal. 246; and *Sheehy* v. *Shinn,* 103 Cal. 325; and upon the authority of those cases the judgment and order appealed from must be affirmed. There is nothing in *Kutz* v. *Fleisher,* 67 Cal. 93, inconsistent with the above cases. That action involved a series of transactions extending over several years, most of which were had prior to January 1, 1880, and the provisions of the present constitution were, of course, inapplicable to them. In the account upon which the action was brought there were two purchases of stocks by the plaintiff for the defendant after that date, and the trial court was requested to hold, as a matter of law, that the mere fact that the plaintiff had purchased and paid for these stocks at the request of the defendant, and, instead of immediately delivering them, had retained them until he should be repaid the advances, was in violation of the statute of frauds, and in contravention of the provisions of article IV, section 26, of the constitution. The trial court refused so to hold or rule, and this court affirmed its action, and held that the statute of frauds and the above provision of the constitution had no application.

Whether a transaction or a series of transactions between a broker and his customer for the purchase of stocks that are not immediately delivered, or of which an immediate delivery is not contemplated, is in contravention of this provision of the constitution, is a question of fact to be determined in each particular case, and the circumstances under which the transaction is had, and the conduct of the parties in reference thereto, will naturally have great influence in determining this fact. Whether the transaction is a legitimate one or

one which is within the inhibition of the constitution, is to be determined by the actual course of dealing and the evident purpose of the parties to such transaction, rather than by what they may have termed it, or by the form in which it may have been entered in their books, and is to be determined by the trial court from the evidence before it; and the finding of the court upon this question of fact is entitled to the same consideration upon an appeal as in any other finding of fact, and must be accepted here as conclusive if there was any evidence in support of it. If the stocks purchased are of a rapidly fluctuating character, and the money therefor is wholly advanced by the broker with whom the stocks are left, either with or without an agreement that they shall be held as security for his advances, and while in his hands are sold under the directions of the customer, and within a short time repurchased and again sold while their market value is fluctuating, and the only connection that the customer may have with them is to pay or receive the balance that the broker's account may show, there would be more reason for finding that such transactions were "on margin," within the meaning of the constitution, than in a case in which there was a single purchase of a stock of a fixed value yielding a regular income, and where the customer was seeking to find a suitable investment for his money. It is not the purpose of this provision of the constitution to interfere with legitimate business, or to make void all time contracts for the purchase of shares in incorporated companies. It was held in *Cashman* v. *Root*, 89 Cal. 373, that this court will take judicial knowledge that the object with which this provision was inserted in the constitution was to strike down a species of gambling in mining stocks which had been rife in this state, wherein individuals were wont to contract for the purchase of stocks to be delivered at a future day, upon the speculation that they would advance in price sufficiently to meet their agreements or purchases; and in *Sheehy* v. *Shinn*, 103 Cal. 325, it was said: " To give effect to the

constitution it is as much the duty of the courts to see that it is not evaded as that it is not directly violated."

The court has found in the present case "that the object of the transactions, and of the agreement between the plaintiffs and the defendant, was that the defendant might realize a profit by speculating in the fluctuations of the market in such stock"; and as a conclusion therefrom that the said transactions were within the prohibition of the constitution, and therefore void. As there was evidence before the court from which it was authorized to make this finding, its conclusion thereon must be accepted as determinative of the point. The written agreement between the parties, under which it is contended the transactions were had, was not all of the evidence before the court, and cannot be invoked as determinative of their character. The transactions themselves are challenged as illegal, and they are to be judged by their intrinsic character rather than from the designation which the parties have given them. If they are within the prohibition of the constitution it is immaterial that the parties thereto have signed an agreement that they shall bear a different name, or be differently classified from what they were in fact and in legal contemplation, or from what a jury may determine them to be.

The judgment and order are affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.