[S. F. No. 1533.   Department One.—October 27, 1900.]

E. A. PARKER, Respondent, v. STEPHEN OTIS and JOSEPH
F. GASSMAN, Partners, etc., Appellants.

CONTRACT TO BUY AND SELL STOCKS ON MARGIN—RECOVERY OF MONEY BY
UNDISCLOSED PRINCIPAL.—An undisclosed principal may recover
money paid by his agent, without disclosing the agency, upon
a contract for the purchase and sale of the stocks of mining
corporations on margins, in violation of section 26 of article IV
of the constitution.

ID.—CONSTRUCTION OF CONSTITUTION — RECOVERY BY PARTY PAYING—
AGENCY.—The constitution, in providing that "any money paid on
such contracts may be recovered by the party paying it," is
not to be literally construed as confining the recovery to the
particular person handing over the money or as taking away
the remedy of the owner of the money paid, because he em-
ployed an agent to pay the money for him.

ID.—EVASION OF CONSTITUTION—DUTY OF COURT.—The constitution will
not be so construed as to permit an evasion of it; but it is
as much the duty of the court, in giving effect to it, to see
that it is not evaded as that it is not directly violated.

ID.—END CONTROLLING FORM OF TRANSACTION.—The end to be attained,
and not the form of the transaction, must determine the ques-
tion of the right of recovery, under the provisions of the con-
stitution.

ID. — PRESUMPTION — KNOWLEDGE OF OWNER'S RIGHT OF RECOVERY —
KNOWLEDGE OF OWNERSHIP.—The defendants must be presumed to
have known that they were receiving money which could be re-
covered by its owner; and it is immaterial to them whether they
knew or did not know who was the owner of the money paid
to them.

ID.—CAUSE OF ACTION—VALIDITY OF AGENCY.—The cause of action of the owner of the money paid in violation of the constitution does not depend upon the validity of the agency under which it was paid, but rests upon the provisions of the constitution making the transaction void and giving the right to recover the money paid.

ID.—CONFLICTING EVIDENCE AS TO OWNERSHIP OF MONEY — SUPPORT OF VERDICT.—Where there is conflicting evidence as to whether the plaintiff was the owner of the money paid, or whether plaintiff had given the money to the person paying it, the verdict of the jury based upon plaintiff's ownership will not be disturbed upon appeal.

ID.—CONTRACT TO BUY AND SELL "STOCKS "—INCORPORATED COMPANIES— CONSTRUCTION—EVIDENCE—MOTION FOR NONSUIT.—A written contract to buy and sell "stocks" must be construed as referring to the stocks of incorporated companies; and under an issue taken upon an alleged contract to buy and sell mining stocks of certain mining corporations on margin, evidence that the money paid was for the purchase of "stocks," which were described in statements furnished by the defendants as "200 Kentuck," "100 Potosi," "100 Yellow Jacket," and the like, sufficiently shows that they were the shares of incorporated companies to preclude the granting of a motion for nonsuit, for failure of direct evidence of that fact.

ID.—FEDERAL CONSTITUTION NOT VIOLATED—POLICE POWER OF STATE.— The constitutional provision of this state for the recovery of money paid for the purchase and sale of stocks on margin is a proper exercise of the police power of the state, and is not in conflict with any of the provisions of the federal constitution.

ID.—DISTINCTION BETWEEN BONA FIDE AND GAMBLING CONTRACTS— PROVINCE OF COURT.—If our constitution fails on its face to distinguish between *bona fide* and gambling contracts, that does not render it the less a proper police regulation; for the question to be determined by the court in each case is whether the constitution is violated, and the court will always see that legitimate business transactions are not brought under its ban.

ID.—PROHIBITED TRANSACTION—CONTRACT WITH STOCK BROKERS—PAYMENT OF "MARGIN"—SECURITY FOR ADVANCES AND COMMISSIONS— POWER OF SALE— DELIVERY OF OTHER STOCKS.—The payment of a mere margin of the cost price of stocks to stock brokers, as agents for the purchase of stocks, under an agreement that the brokers were to make advances for the purchaser, and hold the stocks purchased as security for their advances, commissions, and agreed interest, with power to sell the same to protect their interest, without delivery to the purchaser of any particular shares of the stock purchased, but with readiness of the brokers at any time on demand to deliver a like number of shares upon payment of all balance due, is within the prohibition of the constitution.

ID.—ADMISSION AS TO FACTS—REMARK OF COURT—QUESTION OF LAW—
"MARGIN" CONTRACT—INSTRUCTIONS.—Upon an admission by de-
fendants that their witnesses would testify to certain facts,
showing a "margin" contract, a remark of the court that "the
admission tends to support plaintiff's theory of the case rather
than defendants'," is but the expression of opinion on the ques-
tion of law as to whether the facts, as admitted, constituted a
"margin" contract, and did not invade the province of the jury
nor prejudice the defendants' case; and the court properly in-
structed the jury that the facts of the case supported the plain-
tiff.

ID.—EVIDENCE—CONCLUSIONS OF WITNESSES NOT ADMISSIBLE.—Upon a
question ·asked of plaintiff's sister whether she owed defend-
ants, the answer, "Yes, on a margin proposition," states a con-
clusion not responsive to the question, which should be stricken
out on defendants' motion. To a question asked of plaintiff:
"Did you delegate authority to your sister to act as your agent
and to purchase or deal in stocks on the market with any
broker?" an objection of the defendants that it calls for the
conclusion of the witness should be sustained. A witness
should be confined to facts, leaving conclusions to be drawn
from them to the jury or the court.

ID.—HARMLESS ERROR.—Error in permitting the conclusions of the
witnesses is not prejudicial, where the facts were fully stated
by the witnesses, and the jury drew its own conclusions from
the facts, under the instructions of the court.

ID.—READING TO JURY IRRELEVANT PART OF CONSTITUTION.—The fact
that the court, in reading to the jury the provisions of the con-
stitution on the subject of contracts for the sale of stocks on
margin, read also the first part of the section containing pro-
visions relating to the irrelevant subject of lotteries and gift
enterprises cannot be material or prejudicial to the defendants.

ID.—INSTRUCTIONS—REQUEST AS TO ABSENCE OF SYMPATHY—CHARGE AS TO
ABSENCE OF EQUITIES.—The refusal of a .requested instruction that
"plaintiff is entitled to no sympathy" from the jury is not
prejudicial to the defendants, where the court charged the jury
that "there are no equities between these parties, and their
rights are to be determined by the strict rules of law."

ID.—REQUEST AS TO ABSENCE OF PRESUMPTION—CHARGE AS TO PREPON_
DERANCE OF EVIDENCE.—The defendants cannot complain because the
court refused their request to tell the jury "that it is never
to be presumed that parties deliberately enter into contract in
violation of the constitution," where the court clearly charged
the jury that they must find for the defendants unless they
find from the preponderance of the evidence that the transac-
tions in question were margin transactions within the meaning
of the constitution, as the court had declared that meaning.

Id.—Interest.—A plaintiff recovering money paid on a contract for sales of stock on margin is not entitled to an allowance of interest from the commencement of the action.

Id.—Statute of Limitations—"Penalty"—Money Had and Received—Demand and Refusal.—An action to recover the money paid in violation of the constitution is not barred within one year, as being an action to recover a "penalty" within the meaning of section 340 of the Code of Civil Procedure; but the action is for money had and received, in which recovery cannot be had except after demand and refusal.

Id.—Constitutional Provision Remedial—Action Given not Penal—Damage Measured by Money Paid.—The provision of the constitution relative to unlawful contracts for the sale of stocks on margin and for the recovery of money paid thereon is not penal, but remedial; and the action which it gives is not a penal action merely because the contract is unlawful. The recovery therein cannot be said to be without reference to the actual damage sustained, the damage being measured by the money paid.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William R. Daingerfield, Judge.

The facts are stated in the opinion of the court.

Deal, Tauszky & Wells, for Appellants.

A. Everett Ball, for Respondent.

CHIPMAN, C.—Action to recover four hundred and seventy dollars alleged to have been paid to defendants by plaintiff for the purchase of stocks of mining corporations on margin. The cause was tried by the court sitting with a jury, and plaintiff had the verdict. The appeal is from the judgment and from an order denying defendants' motion for a new trial.

The evidence was that the purchases were all made by plaintiff's sister acting, as is claimed by plaintiff, as his agent, and that he personally had no dealings whatever with defendants and defendants had no knowledge that Miss Parker was acting for plaintiff.

Defendants claim: 1. That the money paid by plaintiff's sister was in fact hers and not his, and if there can be any recovery it must be by her alone; and 2. That if the money could be considered plaintiff's, then he attempted to delegate

authority to his sister to engage in an illegal transaction, thus creating an agency which the law will not recognize.

Section 26, article IV, of the constitution provides as follows: "All contracts for the sale of shares of the capital stock of any corporation or association, on margin to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction."

1. Had the plaintiff personally paid the money he could have recovered it, and we see no reason why the remedy given him by the constitution should be taken away because he employed an agent to pay the money for him. The constitution treats the transactions in question as harmful in their tendency, and because harmful has sought to eradicate the evil not only by declaring the contract void, but also by giving a right of action to recover the money paid under it. Being *in pari delicto*, the purchaser of stocks would be left where the law finds him but for the remedy given by the constitution. It would be an exceedingly narrow and an altogether unwarranted construction of the constitution to hold literally to the words of that instrument—that the money may be recovered only "by the party paying it"; i. e., by the particular person who handed over the money to the seller or in whose name the business might happen to be conducted.

In *Sheehy v. Shinn*, 103 Cal. 325, it was said: "To give effect to the constitution it is as much the duty of the courts to see that it is not evaded as that it is not directly violated." Upon appellants' construction it would be a simple matter to evade the law by interposing an agent of an undisclosed principal to carry on the business with the broker.

In *Cashman v. Root*, 89 Cal. 373,[1] it was urged that the broker was the agent of his customer, and that he was not liable for that reason. The court held him liable as the instrument through which the illegal end was accomplished, and he being privy to the design the same result would follow as if he were the seller; and it was said: "The end attained, and not the form of the transaction, must determine the question."

---

[1] 23 Am. St. Rep. 482.

Defendants are presumed to have known that they were receiving money which could be recovered by its owner if he chose to assert his right; it was immaterial, therefore, whether or not they knew who was the principal for whom Miss Parker was acting. Ordinarily, where an agent acts for an undisclosed principal, either the agent or the principal may sue; and while it is true that one cannot delegate authority to do an illegal act, the cause of action here does not depend on the validity of the agency created by plaintiff, but it rests on the provisions of the constitution which made the transaction void and gave a right to recover the money paid.

2. There is evidence tending to show that plaintiff's sister was acting as his agent in paying the money to defendants; he so testified directly. The cross-examination of Miss Parker gives some ground for doubt as to whether she was acting for herself or for her brother, and would perhaps have justified the jury in finding that the money paid by her to defendants had been given to her by plaintiff and became her own and was hers when paid on account of the stock purchases. But there was evidence supporting the view taken by the jury, and we are not permitted to interfere with its conclusion.

3. The unverified complaint alleges that "defendants heretofore, and within two years last past, contracted with plaintiff to buy and sell mining stocks, portions of the capital stock of certain mining corporations, for plaintiff on a margin to be furnished by said plaintiff," etc. The answer is a general denial and puts in issue the above averment.

There is no direct evidence that there existed a corporation or corporations and that the stocks mentioned in the complaint were shares of the capital stock of such corporation or corporations. This was urged as ground for defendants' motion for nonsuit, and the denial of the motion was assigned as error; and was also specified as one of the particulars in which the evidence is insufficient to support the verdict. The evidence was that the money paid to defendants was for the purchase of "stocks"; and witnesses speak of certificates of stock for a certain number of shares which were purchased in the Pacific Stock Exchange by defendants. A statement of defendants' transactions with Miss Parker was furnished by defendants; in this

statement some of the same stocks referred to by plaintiff's witnesses are enumerated, and in it appears the amount of money paid at certain dates, with a description of the stocks as follows: "200 Kentuck," "100 Potosi," "100 Yellow Jacket," "50 Challenge," and the like. In the written contracts between the parties defendants say: "We will act as agents and brokers in the purchase and sale . . . . of stocks and bonds for our principals," etc.

Webster gives the following definition of the word "stocks": "Property consisting of shares in joint stock companies." In Anderson's Law Dictionary the following definition is given: "The capital of an incorporated company in transferable shares of a specified amount." We think it reasonably clear that the stocks referred to by the witnesses and in the written contracts of the parties were stocks in the sense of the above definition and were shares of incorporated companies.

4. Defendants contend that our constitutional provision is in conflict with section 1 of the fourteenth amendment to the federal constitution, in abridging the privileges and immunities of citizens of the United States and depriving persons of liberty and property without due process of law, and denying persons making margin contracts the equal protection of the laws; that it interferes with the freedom of contract, and is beyond the police power of the state, inasmuch as it is not confined to mere gaming contracts or contracts for the payment of differences, but prohibits legitimate business transactions. This defense was specially pleaded in the answer and was urged on the motion for nonsuit, and was assigned as one of the particulars wherein the verdict is against law.

Chief Justice Shaw, in defining the police power of the state, said: "All property in this commonwealth is . . . . held subject to those general regulations which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient." (*Commonwealth v. Tewks-*

*bury,* 11 Met. 55.) In *Cashman v. Root, supra,* reference was made to the causes which led to the adoption of the constitutional provision in question. It was pointed out that a large part of the community had been set wild by stock speculations, and that "the rapid fluctuations of stock afforded unusual inducement to stock gambling," and it was said: "By skillful manipulation of the markets a few fortunate ones had been able to take advantage of the existing mania and made large fortunes for themselves, at the cost of widespread financial ruin and distress. People of small means were enabled by brokers to speculate largely at that time through these very purchases on margin. Of these matters this court will take judicial notice, and, in doing so, cannot doubt that this inhibition was intended to strike down this practice." This class of speculative investments must be conceded to possess some of the elements of gaming or gambling contracts, and while it may be that but for the constitutional provision they would not be held void, or, if held void, that the law would furnish no relief to parties *in pari delicto,* still their actual as well as possible injurious effect upon the community and its welfare we think clearly brings them within the police power of the state to regulate or prohibit. For a discussion of the police power of the state, see Judge Sanderson's opinion in *Ex parte Smith,* 38 Cal. 702; also Cooley's Constitutional Limitations, 707. Laws in several states of the Union have been enacted to accomplish the same result aimed at by our fundamental law, and, so far as we are advised, have never been successfully attacked as in conflict with the federal constitution. (See statutes of several states referred to in Cook on Stock and Stockholders, sec. 342. See, also, History of Stock Jobbing Acts, c. VIII; Dos Passos on Stock Brokers, ed. 1882, p. 382.)

If the provision in question on its face fails to distinguish between *bona fide* contracts and gambling contracts as is urged, it is none the less a proper police regulation, for the question remains to be determined in each case whether the transaction is in contravention of the constitution. (*Kullman v. Simmens,* 104 Cal. 595; *Sheehy v. Shinn, supra.*) The court will always see that legitimate business transactions are not brought under the ban.

5. It is claimed that the facts in this case do not bring it within the constitutional condemnation. Briefly, the transactions were as follows: Plaintiff paid to defendants certain money, accompanied by an order to purchase certain stocks; defendants went into the stock board, bought and paid for these stocks in full at the market rate; defendants then credited plaintiff with the money paid by him (which was always less than the amount paid for the stocks by defendants, or, in other words, was but a margin of the cost), and by agreement held the stocks as security for their commissions, advances, and for the accumulating interest thereon, with the power to sell the stocks to protect themselves against a decline in value; defendants did not keep the particular stocks purchased, but had others of like character, and could and would have delivered a like number of shares to plaintiff upon full payment of all balances due at any time upon demand; defendants acted only as agents of plaintiff and had no interest in the stocks beyond their commissions, advances, and the agreed interest. So far as we can perceive, the deal was similar to that in the cases heretofore passed upon by this court and held to be within the provisions of the constitution. (See *Sheehy v. Shinn, supra,* and cases there referred to; *Kullman v. Simmens, supra.*)

6. It is contended that the court invaded the province of the jury in remarking, as to an admission that defendants' witnesses would testify to certain facts, as follows: "The admission tends to support plaintiff's theory of the case rather than defendants'." It is urged that the remark was prejudicial, particularly in view of an instruction asked by defendants, and refused by the court, to the effect that whether the transactions in question are in contravention of the constitution is a question of fact to be determined by the jury from all the circumstances (citing *Kullman v. Simmens, supra*); whereas the court told the jury that it is a question of "mixed law and fact." The court instructed the jury that they were "to apply to that evidence these instructions [the instructions previously given] as to the law." The admission referred to presented the question as to whether the facts as admitted constituted a "margin" contract, and this was purely a question of law. The court in its remark assumed the facts to be as admitted, and so left them with the jury, but it

intimated, as it later on properly instructed the jury, that as matter of law the facts supported plaintiff; and in this we think the court did not err, and the remark could not have have prejudiced defendants' case.

7. When Miss Parker was testifying for plaintiff counsel asked her: "Do you owe Otis & Co. any money?" Defendants' objection was overruled and the witness answered: "Yes, on a margin proposition." Defendants moved to strike out the latter part of the answer as not responsive to the question and as being a conclusion. The court overruled an objection to the following question asked plaintiff: "Did you delegate authority to your sister to act as your agent and to purchase or deal in stocks on the market with any broker?" The motion in the one case should have been granted and the objection in the other should have been sustained. A witness should be confined to facts, leaving conclusions to be drawn from these facts to the jury or court. The defendants, however, were not injured, because the facts were fully stated during the examination of the witnesses, and the jury could and no doubt did draw its own conclusions from these facts under the instructions of the court as to what constituted margin contracts.

8. Error is claimed because the court, in its instructions, read to the jury the whole of section 26, article IV, of the constitution, the first part of which relates to lotteries and gift enterprises. It was not necessary to the case to read more than the latter part of the section, but reading all of it could not have been prejudicial to defendants. Error is claimed in refusing to give certain instructions asked by defendants, or in modifying them as given.

We have carefully examined these offered instructions and find that such of them as were essential to a proper presentation of the issues to the jury were given as asked or with such modifications as fairly placed the matters in controversy before the jury. Those which were refused were not such as could enlighten the jury or aid them in reaching a right conclusion. For example, it could not have injured defendants by refusing to tell the jury that plaintiff "is entitled to no sympathy from you"—the court, however, did tell them that "there are no equities between these parties, and their rights are to be deter-

mined by the strict rules of law," and this was about equivalent to telling them that neither party was entitled to their sympathy. Again, defendants cannot complain because the court refused to tell the jury "that it is never to be presumed that parties deliberately enter into contract in violation of the constitution." The court very clearly pointed out to the jury that they must find for the defendants unless they should find from the preponderance of the evidence that the transactions in question were margin transactions within the meaning of the constitution as the court had declared that meaning. The instructions as given were a remarkably clear exposition of the law, and the jury were repeatedly cautioned as to its application to the facts and as to the rules which should govern them in judging of the facts. We see no prejudicial error in giving or refusing any instructions.

9. There remains but one question undisposed of. The court instructed the jury to allow interest from the commencement of the action, and this is urged as error. We think the question is settled by the decision in *Baldwin v. Zadig*, 104 Cal. 594.

It is advised that the judgment be modified by striking therefrom the amount allowed for interest, and thus modified that the judgment and order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is modified by striking therefrom the amount allowed for interest, and, thus modified, the judgment and order are affirmed. .        Van Dyke, J., Garoutte, J., Harrison, J.

On petition for rehearing, the court, in Bank, rendered the following additional opinion, which was dated November 26, 1900, and filed November 27, 1900

.THE COURT.—A point overlooked in the commissioner's opinion is the defense of the statute of limitations. The claim is that subdivision 1, section 340, of the Code of Civil Procedure applies, because this is an action upon a statute for a penalty or forfeiture, and, if so, must have been commenced within one year.

What is meant by a statutory penalty was defined in *Los Angeles v. Ballerino,* 99 Cal. 593, to be "one which an individual is allowed to recover against a wrongdoer as a satisfaction for the wrong or injury suffered, and without reference to the actual damage sustained, or one which is given to the individual and the state as a punishment for some act which is in the nature of a public wrong. The action to recover such a penalty is a penal action founded upon a statute, and is the action which, under section 340 of the Code of Civil Procedure, must be brought within one year."

There is nothing penal in the constitutional provision; it is simply remedial. The action is for money had and received, and recovery cannot be had except after demand and refusal. (*Baldwin v. Zadig,* 104 Cal. 594.) But for the constitution there could be no recovery. If the constitution, in effect, makes the margin sales of stock unlawful, it does not follow that the action given to recover the money paid for the purchase of such stock is a penal action, or is for the recovery of a penalty, and certainly the recovery cannot be said to be "without reference to the actual damage sustained," for there is no damage except as measured by the money paid.

Rehearing denied.