[S. F. No. 3268.    Department One.—May 3, 1905.]

HENRY C. STILLWELL, Respondent, v. EDWARD B. CUTTER, and ANDREW S. MOSELEY, Copartners, etc., Appellants.

VOID CONTRACT WITH BROKERS—SPECULATION IN STOCKS—PURCHASE AND SALE ON MARGIN—RECOVERY OF MONEY PAID.—A contract made by the plaintiff with stockbrokers, for the purpose of speculating in the rise and fall of the shares of stock of a corporation, to purchase a number of shares thereof on margin, without knowing of whom or where they were to be bought, or were bought, and which were to be delivered only at a future day, if at all, with the understanding that in case of a decline in value the margin was to be kept good, and that the brokers were to retain the shares as security for the balance due, with commission and interest, and sell the same when the security should be endangered, is void, under the terms of section 26 of article IV of the constitution, and the money paid thereunder may be recovered.

ID.—EXECUTED AND EXECUTORY SALES ON MARGIN—QUESTION UNDECIDED —SUPPORT OF FINDINGS.—Where the findings supported by the evidence clearly show that the contract made was void under the express terms of the constitution, it is unnecessary to decide the question whether the constitution only inhibits executory contracts *for* the sale of stock on margin, and does not inhibit executed contracts *of* sale on margin.

ID.—AGENCY OF BROKERS — PLACE OF VENDOR. — Admitting that the brokers were the agents of the customer, and made the purchase at his request, and on his account, through third parties, yet, where the brokers, in the accomplishment of the forbidden purpose, took the place of the vendor, and carried the stock on margin, as the vendor might have done, the customer knowing no other parties in the transaction, the agency of the brokers cannot preclude the recovery from them by the customer of the money paid to them for the sale of the stock on margin.

ID.—MONEY DUE BROKERS ON GRAIN CONTRACTS—COUNTERCLAIM NOT PLEADED.—A sum of money due the brokers on grain contracts, having nothing to do with the transaction in question, and which was not pleaded as a counterclaim, cannot be considered as a payment or credit on the money recovered.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.    James M. Troutt, Judge.

The facts are stated in the opinion.

Campbell & Metson, and Campbell, Metson & Campbell, for Appellants.

The constitution does not prohibit actual dealing in shares of stock nor sales for part cash and part credit, or executed contracts *of* sale on margin, as distinguished from executory contracts *for* sale on margin. (*Sheehy* v. *Shinn,* 103 Cal. 328, 340; *Booth* v. *Illinois,* 184 U. S. 425; *Schneider* v. *Turner,* 130 Ill. 28.) The restriction will not be extended by construction. (*Maurer* v. *King,* 127 Cal. 114.)

I. B. L. Brandt, and Charles A. Shurtleff, for Respondent.

The contract found was for the sale of stock on margin, within the meaning of the constitution and the decisions of this court. (Const. art. IV, sec. 26; *Cashman* v. *Root,* 89 Cal. 373;[1] *Wetmore* v. *Barrett,* 103 Cal. 246; *Sheehy* v. *Shinn,* 103 Cal. 325; *Baldwin* v. *Zadig,* 104 Cal. 595; *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 385; *Parker* v. *Otis,* 130 Cal. 322.[2])

CHIPMAN, C.—This action was brought to recover money paid by plaintiff to defendants on an alleged contract for the sale of stocks on margin. Plaintiff had judgment, from which and from an order denying their motion for a new trial defendants appeal.

The action was authorized by section 26 of article IV of the state constitution, reading as follows: "All contracts for the sale of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction."

The court found that plaintiff paid to defendants and defendants received $3,071.46 under the following circumstances, which were well known by defendants: That at divers times,—to wit, between April 10th and 16th, in the year 1900,—for the purpose of speculating in the rise and fall of shares of the capital stock of the American Steel and Wire Company, a corporation, defendants as stockbrokers, at the request of·plaintiff, purchased for his account two hundred shares of the capital stock of said corporation;

[1] 23 Am. St. Rep. 482.        [2] 92 Am. St. Rep. 56.

that said shares were never delivered to plaintiff and were purchased with the understanding that they were not to be delivered at the time of the purchase, but on the contrary were to be delivered at some future time, when the sum of money due the defendants, on account of said purchase, should be paid by plaintiff; that at the time of said purchase defendants demanded and received only a percentage of the purchase price in an amount sufficient in defendants' judgment to secure them against any loss which might result from a decline in value thereof, and with a further understanding that defendants should retain said shares as security for the balance due defendants, and might sell the same whenever such a decline occurred in the value thereof as would endanger defendants' security; that plaintiff was charged with the purchase price of said shares, together with the broker's commission, and with interest on the balance due defendants, and was credited with the stock purchased and the money paid on said account; that upon receiving orders for the purchase of said shares, defendants, without plaintiff's knowledge or consent, instructed certain stockbrokers in Chicago to purchase said shares, who purchased the same by telegraph in New York City; that pending said transaction between plaintiff and defendants, the value of said shares declined, in consequence whereof defendants called upon plaintiff and received from him "from time to time further and additional moneys to keep up his marginal account and protect the same; that plaintiff demanded the return of said sum of $3,071.46 from defendants, but defendants failed and refused to return the same or any part thereof, and no part thereof has been paid to plaintiff." From these findings the court found as conclusions of law that said article of the constitution had been violated, and that plaintiff was entitled to recover the amount above stated.

Appellants contend: That the evidence does not show the existence of a contract for the sale of shares on margin, and that defendants were but the agents of plaintiff, and that because defendants executed plaintiff's orders to purchase the stock through other brokers, plaintiff has sued the wrong party.

Appellants urge with much amplification that the constitutional inhibition does not extent to contracts *of* sale on

margin, but only to contracts *for* the sale on margin; that the former class are but ordinary executed contracts, while the latter are executory, and that the present case falls under the former class, and are therefore not inhibited. We do not think it necessary to decide whether or not such distinction can be drawn. There is evidence to support the findings, and the findings show that the contract was within the express terms of the constitution, and was clearly void under the provisions of that instrument.

The court found that plaintiff gave his orders for the purchase of the stock to defendants and did not know whence or from whom they obtained it or who made the purchase for plaintiff's account. The objection that defendants were but the agents of plaintiff, and, inferentially, that the brokers who purchased the shares should have been sued, is not new. It was held in *Cashman* v. *Root,* 89 Cal. 373, that, admitting the broker to be the agent of his customer, if by the transaction the customer is enabled to do that which is prohibited,—to wit, purchase stock on margin,—it would be within the prohibition even if the broker-agent did not himself sell to his customers. The court said: "In the accomplishment of the unlawful purpose he took the place of the vendor, and carried the stock as the vendor might have done; and the end was thus reached *per interpositam personam.* The end attained and not the form of the transaction, must determine the question." (See, also, *Parker* v. *Otis,* 130 Cal. 322.[1])

Since the adoption of the new constitution the provision in question has several times been before the court under varying conditions of fact. We find nothing in the present case that should take it out of the category of cases heretofore decided adversely to defendants' contention. Substantially all the questions presented by the evidence and now involved were decided against defendants in the cases above cited. (See, also, *Wetmore* v. *Barnett,* 103 Cal. 246; *Sheehy* v. *Shinn,* 103 Cal. 325; *Baldwin* v. *Zadig,* 104 Cal. 594; *Kullman* v. *Simmens,* 104 Cal. 595; *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 385.)

Appellants claim that the judgment was too great by $106.04. This conclusion is reached by deducting from the amount lost on the American Steel and Wire Company's stock

[1] 92 Am. St. Rep. 56.

deal ($3,071.46), the balance said to be to the credit of plaintiff at a certain date after the sale of certain wheat options ($2,965.42). Plaintiff testified that his purchases of grain futures had nothing to do with his purchase of the wire company's stock, and that he paid in all $3,886.91 as margin on the shares of the American Steel and Wire Company. Accepting the testimony of plaintiff, as the trial court must have done, the judgment was not too great. The defendants pleaded no counterclaim for the $106.04, and it did not technically constitute a payment or credit on the sum sued for.

It is advised that the judgment and order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Shaw, J., Angellotti, J., Van Dyke, J.

Hearing in Bank denied.