[Civ. No. 1390.    Third Appellate District.—October 20, 1915.]

# W. P. FULLER & COMPANY (a Corporation), Respondent, *v.* ALTURAS SCHOOL DISTRICT OF MODOC COUNTY et al., Defendants, and A. E. PEARSON et al., Appellants.

BOND—PUBLIC BUILDING CONTRACT—GUARANTY OF PAYMENT OF CLAIMS OF MECHANICS—CONSTRUCTION OF INSTRUMENT.—An undertaking given to secure the faithful performance of a contract for the construction of a school building which guarantees that the contractor "shall, in all things, stand true and abide by and well and truly keep and perform the covenants, conditions and agreements in that certain contract . . . and shall in all respects fully carry out and perform his part of said contract, as herein stipulated," etc., is not an undertaking given for the sole benefit of the school district, but is for the benefit, as well, of materialmen, mechanics, and laborers furnishing materials and bestowing labor upon the building, where the contract provides that the contractor will provide the materials and the labor essential to the construction of the building *"at his own cost and expense."*

ID.—CONSTRUCTION OF UNDERTAKING—CONTRACT PART OF.—While it is elementary that sureties are never bound beyond the strict letter of their contract, and that they have the right to stand upon the precise terms of their agreement, and that there is no authority for extending their liability beyond the stipulation to which they have chosen to bind themselves, it is also elementary that a bond given to guarantee the execution of a contract according to its terms becomes a part of such contract, and to that contract the

28 Cal. App.—39

sureties become parties the same as though they had actually made and executed the contract itself.

ID.—APPLICABILITY OF BOND TO PUBLIC CONTRACTS.—Such an undertaking is not restricted in its application to contracts for the construction of private buildings, notwithstanding that public buildings are not subject to the operation of the lien law.

ID.—ALTERATIONS IN CONTRACT—RESERVATION OF OWNERS—SURETIES NOT EXONERATED.—Where such a building contract reserves to the owners the right to make alterations in the contract without notice to the sureties, variations of minor importance and involving no expenditures which would make the aggregate contract price of the building greatly exceed that of the price stipulated, are authorized without notice to or consent of the sureties.

APPEAL from a judgment of the Superior Court of Modoc County.   C. A. Raker, Judge.

The facts are stated in the opinion of the court.

Jamison & Wylie, for Appellants.

L. T. Hatfield, for Respondent.

HART, J.—This is an action on a bond executed by one A. E. Pearson, as principal, and the appellants, as sureties, and given for the purpose of guaranteeing the faithful performance of a certain contract entered into by said Pearson and the defendant school district, for the construction by Pearson of a two-story school building for said district.

A number of persons who had either furnished material for or bestowed labor upon the work of construction assigned their respective claims to the plaintiff, and the action here is by the plaintiff on a claim of its own for materials alleged to have been furnished by it to Pearson and on the several assigned claims referred to, the same being set up in the complaint in different counts by appropriate averments.

The plaintiff was awarded judgment against Pearson and the appellants (sureties on the bond upon which the action is founded) in the total sum of $1,262.29.

This appeal is prosecuted from said judgment by the sureties on said bonds, A. B. Estes, A. W. Toreson, W. Wade Williams, B. L. Kelley, and C. W. Williams.

The contract, to insure the performance of which the bond sued on was given, was entered into on the sixth day of June,

1911, and by its terms Pearson agreed to construct a two-story school building for the school district and "at his own expense and cost find and provide" all the materials and furnish all the labor necessary to its completion in conformity to the plans and specifications according to which it was to be constructed for the sum of twenty thousand three hundred and fifty dollars.

Pearson entered upon the execution of the terms of the contract in due time, but, for reasons not disclosed by the record before us, abandoned the contract before completing the construction of the building according to his agreement. It appears that, of the contract price, he was paid a trifle over the sum of fourteen thousand dollars, which constituted approximately seventy-five per cent of the contract price. Upon the abandonment of the contract by Pearson, the school district itself took charge of the same and completed the construction of the building according to the Pearson contract and the plans and specifications. The total amount expended in the construction of the building, as finally completed, exceeded by a few hundred dollars the contract price.

It is not claimed that the undertaking was executed and given in pursuance of the provisions of the act of 1897, entitled "An act to secure the payment of the claims of materialmen, mechanics, or laborers, employed by contractors upon state, municipal, or other public work." (Stats. 1897, pp. 201, 202; see, also, Stats. 1911, p. 1422, whereby said statute was amended in certain particulars.) It is, on the contrary, conceded that the undertaking is a common-law bond.

The part of the said undertaking important to the inquiry here reads as follows: "The condition of the above bond is such that, if the said above bounden A. E. Pearson, his heirs, executors and legal representatives, shall in all things stand true and abide by and well and truly keep and perform the covenants, conditions and agreements in that certain contract this day made and entered into by and between the said A. E. Pearson and the said Alturas School District, for the construction and completion of the Alturas public school building, as described therein, which the said A. E. Pearson, by said contract has agreed to do and perform, and shall in all respects fully carry out and perform his part of said contract,

as therein stipulated, then the above obligation shall be void; otherwise to remain in full force and effect.''

It is not disputed that the materials and the labor to recover the value of which is the ultimate object of this action were furnished by the plaintiff and its assignors to Pearson, the contractor, and used in and upon the construction of the building.

The defendants demurred to the complaint for want of sufficient facts, and the same was overruled. Thus, and by an attack upon the finding involving a construction of the undertaking and its scope and effect, the first point urged against the legality of the judgment is presented, viz: That the plaintiff failed to state or establish a cause of action against the sureties named as defendants herein for the reason, so it is asserted, that the bond upon its face shows that it was given to the school district and not to materialmen, mechanics, and laborers furnishing materials and labor to the contractor, and that the sole purpose of the bond was, therefore, to bind the contractor to carry out and perform the terms of the building contract made by him with said district and to furnish at his own expense the labor and material necessary to complete the building according to the contract and plans and specifications. In other words, it is the contention that the bond was not intended to bind the contractor to pay for the materials and labor used in and upon the building, and that, therefore, with the completion of the structure by the contractor conformably to the terms of the contract and the plans, drawings, and specifications terminated the liability of the sureties, notwithstanding that some of the materials and labor used and employed in the construction of the building might not have been paid for by the contractor. Hence, it is argued that the trial court erred in overruling the demurrer and in its interpretation of the undertaking.

It is elementary that ''sureties are never bound beyond the strict letter of their contract; that they have the right to stand upon the precise terms of their agreement, and that there is no authority for extending their liability beyond the stipulation to which they have chosen to bind themselves.'' (*Callan* v. *Empire State Surety Co.*, 20 Cal. App. 483, 485, [129 Pac. 978, 981].) But it is also elementary that a bond given to guarantee the execution of a contract according to its terms becomes a part of such contract, and to that con-

tract the sureties become parties the same as though they had actually made and executed the contract itself. · Therefore, in interpreting the language of the undertaking for the purpose of gathering its scope or the measure of the liability of the sureties, we must do so by treating or viewing the contract and the undertaking as a whole or as constituting an indivisible contract. In other words, we must, in order to ascertain the nature and extent of the liability to which the sureties have bound themselves, examine the undertaking by the light of the agreement of whose terms it guarantees the faithful performance.

Thus construing the undertaking in the present case, it seems to us that there is no escape from the conclusion that the same was not given for the sole benefit of the school district, as is the contention of the appealing defendants, but that it was intended to inure as well to the benefit of third parties providing materials and furnishing labor to be used in the construction of the building.

While neither the bond itself nor the building contract expressly guarantees that the contractor shall pay claims arising against him by reason of materials and labor furnished to him for use in the construction of the building, it is, nevertheless, very clear that the language of the contract sufficiently implies that such obligation was imposed upon him to justify us in giving the undertaking that interpretation, and that such was its intention and purpose. The undertaking, as seen, guarantees that the contractor "shall, in all things, stand true and abide by and well and truly keep and perform the covenants, conditions, and agreements in that certain contract . . . and shall in all respects fully carry out and perform his part of said contract, as herein stipulated," etc. What were the covenants, conditions, and agreements the performance of which they thus guaranteed? Among them was the condition or covenant or agreement that, *at his own cost and expense,* the contractor will provide the materials and the labor essential to the construction and completion of the structure according to the terms of the building contract, and the language, "at his own cost and expense," obviously means that thus the contractor intended to and did bind himself to *pay* for such materials and labor, and, as declared, the liability of the sureties is coextensive with that of the con-

tractor. It may be suggested that doubtless the materialmen and laborers concerned here, knowing that public buildings are not subject to the operation of the mechanics' lien law, so-called, and knowing, furthermore, that they could have no legal recourse against the school district for the recovery of the amounts which might become due them on their claims against the contractor (there being no contractual relation between them and the district by reason of their transactions with the contractor), furnished the materials and labor to the contractor on the faith of the undertaking, and, as stated, from the general tenor of that instrument, as viewed in the light of the contract, they were justified in doing so.

An opposite view of an undertaking in substantially the same language as the bond here was taken in the case of *Boas* v. *Maloney,* 138 Cal. 105, [70 Pac. 1004], the conclusion reached therein being supported by the case of *Gato* v. *Warrington,* 37 Fla. 542, [19 South. 883]. But in the case of *Callan* v. *Empire State Surety Co.,* 20 Cal. App. 483, [129 Pac. 978, 981], the district court of appeal of the first district had occasion to consider an undertaking of the character of the one here and which was in similar language. The question was exhaustively examined and many authorities involving the same proposition considered by Mr. Justice Kerrigan of that court, and it was there found and shown that the doctrine of the Maloney and Gato cases had been generally disapproved by the courts of other jurisdictions, and the conclusion was reached and announced that a bond given in support of a building contract and in language similar to that of the undertaking and contract in the present case was intended to and did protect the rights of materialmen and laborers as well as those of the owner of the building. In denying a petition for a hearing of the cause after judgment rendered by the district court of appeal, the supreme court said: "We agree with the reasoning of the district court of appeal to the effect that *Boas* v. *Maloney,* 138 Cal. 105, [70 Pac. 1004], is no longer authority."

The rule declared in the Callan case is now accepted generally as the correct doctrine in the matter of the construction of building contract bonds such as the one here, and while we have found no case in which the same construction is given undertakings precisely similar to the one here, where the structure for the erection of which the building contract calls

is a public building which, as seen, is not subject to the operation of the lien law, we can perceive no just or sound reason for holding that the latter class of undertakings should not likewise be interpreted. As is plainly pointed out in the Callan case, and as must be true in the very nature of the situation, the purpose of such undertaking is not alone to protect the rights of the owners of property upon which buildings are to be erected under building contracts but also to protect the rights of or serve as indemnity to persons providing material and furnishing labor in the construction of such building, and we can conceive of no just ground, and surely none has been suggested in the briefs, upon which the hypothesis can be supported that, merely because upon considerations of public policy public buildings, unlike privately owned structures, are by the law exempt from the embarrassment of liens growing out of debts created by the contractor in the construction of such buildings, the materialmen and laborers providing materials for and bestowing labor upon such buildings are to be deprived of the benefits flowing from an undertaking which, when given to guarantee the performance of a contract for the construction of a private building, would protect their rights. In other language, no reason is discernible for holding that an undertaking such as the one here is restricted in its application to contracts for the construction of private buildings.

It follows that the plaintiff or other persons who furnished to the contractor materials or labor which have not been paid for are entitled to proceed against the sureties on the undertaking for the recovery of the amounts coming to them for the materials and services so furnished.  (Civ. Code, sec. 1559.)

It is next contended that, in the construction of the building, the terms of the contract and the plans and specifications were departed from in material respects without notice to or the consent or acquiescence of the sureties, and that thus the latter were exonerated from liability on the undertaking.

A painstaking review of the record has not convinced us that the sureties were prejudiced by the alleged variations from the contract and the plans and specifications referred to and specifically pointed out in the brief of the appellants.

The building contract contains the following provision: "Modification. The owners reserve the right to make any additions to, omission from, or change in, or substitution for,

the work or material called for by the drawings and specifications, without notice to the surety or sureties on the bond given to secure satisfactory compliance with the terms of the contract.''

As before declared, the building contract became and is to be treated as a part of the undertaking, and manifestly the sureties, upon executing and giving the bond, subscribed to the foregoing provision of the building contract as effectually as though it had been expressly incorporated into the undertaking. itself. By the terms of that provision, therefore, the sureties expressly agreed that the school district might, without consulting or notifying them, exercise the right thus and thereby reserved to it. Of course, the provision is to be given a reasonable construction, or, in other words, should not be so construed as to allow, in the erection of the building, such departure from the terms of the building agreement as that the sureties would be required, if forced to meet the obligations of their engagement, to bear a burden out of all reason or clearly not contemplated by the terms of their undertaking, or those of the above quoted provision of the building contract. We should say that variations of minor importance and involving no expenditures which would make the aggregate contract price of the building greatly exceed that of the price stipulated would be authorized by the terms of the contract without notice to or the consent of the sureties. The changes complained of do not appear to have involved such an extra expenditure in the erection of the building as to justify the conclusion that, in making them, the school district exceeded the bounds of a reasonable exercise of the right which it reserved to itself.

An examination of the testimony, however, discloses that the excess cost occasioned by all the variations from the plans and drawings was borne by the school district itself.

The specific alterations complained of are: 1. ''The change by which a brick hollow wall was substituted for a solid stone wall; 2. Putting in a sub- or reinforced floor on the first floor; 3. Changing the material to be used for floors, and interior finish from pine to hardwood; 4. Changing the location of the principal's room and the library room; 5. Substituting a larger heating plant than the one called for by the contract.''

The testimony of certain members of the board of trustees of the school district is, in substance, as follows: That the

extra expense occasioned by the putting in of a reinforced floor in the first story was paid by the district and that the change in that respect was wholly outside the contract; that, in installing a more elaborate heating plant than the one called for by the contract, an expense in excess of that specified in the contract for that purpose was incurred, but that the district paid the contractor the difference out of other moneys than those contemplated by the contract—that is, the excess cost of the plans was not charged to the contractor or the bondsmen but was arranged for and paid independently of the original building agreement; that the putting in of maple floors was according to the contract, this explanation in that connection being made: That the specifications called for either pine or maple flooring; that the bid on the contract fixed the cost of maple flooring at the sum of seven hundred and fifty dollars in excess of the cost of pine flooring, and that the district accepted the bid for the maple floor before the contract was executed. As to changing the library and principal's rooms, it was made to appear that, according to the original plan of the building, and before the contract was let, the library room was to be on the upper floor and the room of the principal of the school on the lower floor, and that, prior to the letting of the contract and the execution of the agreement by the parties, the arrangement as to the library room and the principal's room was reversed, so that the former was placed on the lower and the latter on the upper floor. As to the change in the character of the material of which the wall up to the window-sill of the first story was made, there is testimony that there was no material difference between the cost of a brick and that of a stone wall.

It will be perceived from the foregoing that not only was the school district authorized by the contract to whose terms the sureties bound themselves to make the alterations complained of in the plan and specifications but that it, independently of the contract, itself paid the cost in excess of that specified in the contract for those parts of the specifications so changed. Manifestly, therefore, the liability of the sureties was not changed or their rights in any manner prejudiced.

No other points are presented. The judgment is affirmed.

Chipman, P. J., and Ellison, J., *pro tem.*, concurred.