[Civ. No. 10267. Second Appellate District, Division Two.—June 27, 1935.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. HOPPENYAN'S INCORPORATED (a California Corporation), Defendant; FIDELITY AND DEPOSIT COMPANY OF MARYLAND (a Corporation), Appellant.

Joe Crider, Jr., and Clarence B. Runkle for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Thatcher J. Kemp, Deputy City Attorney, for Respondent.

SCOTT, J., *pro tem.* — Defendant Fidelity and Deposit Company of Maryland appeals from a judgment against it as surety on a bond which it executed to guarantee certain street work to be done by the principal, its codefendant, in subdividing a tract of land.

The principal had offered to the plaintiff city a subdivision map of the tract. Before filing the map the city required and appellant furnished a bond for $6,000 which was in part as follows: "Whereas, the City of Los Angeles, for the purpose of securing means whereby drainage which affects said street will be properly cared for, street maintenance cost to the City will be as far as possible eliminated and the public will be protected from accidents, demands that all of the streets now offered for dedication in said Tract shall be provided with a pavement having surface sloped toward the hill side, and a concrete curb on the hill side of the roadway, satisfactory to the Board of Public Works of said City. Now therefore, if the work outlined above is completed to the satisfaction of said Board of Public Works before June 1st, 1929, then the obligation of this bond shall be null and void, otherwise it shall remain in full force and effect." The bond was executed June 2, 1927.

Two years later the work had been only partially completed, so the same defendants, as principal and surety, executed a further bond for $6,000, in part as follows: "Whereas said Hoppenyan's Incorporated, in May, 1927, submitted for record a map of a subdivision of land known as Tract No. 9970, located in the City of Los Angeles, and on June 2d, 1927, as Principal, with said Fidelity and Deposit Company of Maryland, as Surety, executed Bond No. 2188, on file in the office of the Bureau of Engineering of said City, guaranteeing to perform work described in said bond before June 1, 1929, in a manner satisfactory to the Board of Public Works of said city; and whereas for certain justifiable reasons only a small portion of said work has been performed and said Principal has requested that the time specified in said Bond No. 2188 within which said work was to be completed be extended to June 30th, 1930; which work includes curbing and paving all of the streets in said tract in a manner satisfactory to said Board. Now therefore, if said Principal obtains from said Board, as prescribed in Ordinance No.

140

57971 of said City, a permit to construct the work described and deposits the fee and files the faithful performance bond required by said ordinance in time to complete said work before June 1, 1930, or before the end of any additional extension of time for completing the work that may be granted by said Board, then the obligation of this bond shall become null and void at the time said fee is deposited and said faithful performance bond is filed. However, in case said Principal fails to obtain such a permit in time to complete said work within the period of time allowed, the obligation of this bond shall remain in full force and effect.''

The trial court found that ''the amount which the city of Los Angeles will be obligated to expend to perform and complete the work mentioned in said bond, to the satisfaction of said Board of Public Works'', was $562.50 for curbing, $250 for gutters and $3,070.60 for pavement, plus $582.46 for engineering, superintendents' and contractors' fees and contingencies.

 Appellant urges that the bond in question is unenforceable for uncertainty.

It is not suggested that appellant executed either obligation without receiving adequate consideration therefor, nor is it established that it was unaware of the general nature and extent of the work contemplated. We may assume that it had executed other bonds, knew the general limits as to requirements for such street work and that the city by ordinance and through its board of public works would determine what work should be done and how it should be done, and was satisfied to obligate itself as surety to the amount fixed to assure the city that the improvements contemplated would be made. It does not appear that the type of street work which could be done for the amount awarded by the trial court would be unreasonable, nor that the amount of the judgment was excessive. We find no merit in appellant's suggestion that certain evidence which was introduced to furnish a basis for the trial court's determination as to the nature and cost of the work required should have been excluded. We likewise approve the inclusion in the judgment of an amount to pay for gutters, as well as pavement and curbing. Appellant knew that the streets were being paved and the curbs installed for drainage purposes and to keep down

maintenance charges to the city. To say that this primary purpose of the work thus promised would be accomplished without a gutter joining the pavement and curb to carry off the water would be contrary to the ordinary experience and observation.

"While it is true that a surety cannot be held beyond the express terms of his contract, yet in interpreting the terms of a contract of suretyship the same rules are to be observed as in the case of other contracts. Such construction does not mean that words are to be distorted out of their natural meaning, or that, by implication, something can be read into the contract that it will not reasonably bear; but it means that the contract shall be fairly construed with a view to effect the object for which it was given, and to accomplish the purpose for which it was designed. The old rule of *strictissimi juris* applies only to the extent that no implication shall be indulged in to impose a burden not clearly inferable from the language of the contract, but does not apply so as to hold that the contract shall not be reasonably interpreted as other contracts are. (Civ. Code, sec. 2837.)" (*Sather Banking Co.* v. *Briggs Co.*, 138 Cal. 724 [72 Pac. 352].) "We must, in order to ascertain the nature and extent of the liability to which the sureties have bound themselves, examine the undertaking by the light of the agreement of whose terms it guarantees the faithful performance." (*W. P. Fuller & Co.* v. *Alturas School District,* 28 Cal. App. 609, at p. 613 [153 Pac. 743].)

In the instant case we note that during the two years elapsing between the execution of the two bonds some work had been done as agreed, and we are not told that the cost of the work remaining to be done and for which judgment was recovered on the bond was disproportionate to the cost of this earlier improvement. When language is used as in this case we must hold that "a surety is not hedged by any sanctity which prevents the application of the same rules to the construction of its agreements as are used to admeasure the obligations arising under other contracts. The extent of a surety's liability must be gathered from the language used when read in the light of the circumstances attending the transaction." (*Hollenbeck-Bush Mill Co.* v. *Amweg,* 177 Cal.

159, at p. 162 [170 Pac. 148]. See, also, *Roberts* v. *Security Trust & Savings Bank,* 196 Cal. 557 [238 Pac. 673].)

Reading the obligations of appellant in the light of the circumstances, we find no uncertainty as to the obligation assumed by it and no unreasonableness in the determination of the trial court as to the amount of the award.

Judgment affirmed.

Crail, J., and Stephens, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 26, 1935.