[L. A. No. 18664. In Bank. May 2, 1944.]

ALICE DAVENPORT, Appellant, v. GEORGE W. STRATTON, Respondent.

Mathes & Sheppard and Gordon F. Hampton for Appellant.

James V. Brewer for Respondent.

CURTIS, J.—Plaintiff, as the assignee of 11 West 42nd Street, Inc., a New York corporation (hereinafter referred to as the lessor or the corporation), instituted this action to recover from the defendant an amount alleged to have been due and unpaid under the terms of a certain lease and agreement executed by her assignor, as lessor, and one Albert De Windt, as lessee, and guaranteed by the defendant, George W. Stratton, and one Stanley E. Comstock. The property was described in the lease as two offices numbered 1454 and 1456 in a certain building situated in the city of New York. The term of the lease was for five years and two and one-half months beginning on February 16, 1929, and ending on April 30, 1934. The rental was $3,000 per year, payable $250 per month in advance on the first day of each month of the term, except as to the first month's rent, which was made payable on the signing of the lease. The evidence shows without any substantial conflict that such a lease was executed by the parties thereto at or about the first day of February, 1929. Thereafter the lessee, De Windt, concluded that he required additional room in which to carry on his business and began negotiating with the lessor for such additional space. The

result of these negotiations was that on April 8, 1929, an agreement was entered into by the 11 West 42nd Street, Inc., the lessor, and De Windt, the lessee, whereby there was incorporated in the terms of the original lease additional rooms in said building, and in consideration thereof the rent was increased from the sum of $250 per month to the sum of $500 per month payable as provided in the original lease. Before entering into this agreement the corporation required that De Windt furnish responsible persons to guarantee the lease and on the date of the agreement, April 8, 1929, defendant Stratton and Stanley E. Comstock executed and delivered to the corporation the written guaranty upon which the plaintiff relies in support of her right to recover in this action. Said guaranty being in words and figures as follows:

"Annexed to and forming part of agreement dated April 8, 1929, between 11 West 42nd Street, Inc., as Landlord, and Albert De Windt, as Tenant, which agreement refers to lease dated February 1, 1929, between 11 West 42nd Street, Inc., as Landlord, and Albert De Windt, as Tenant.

"That in consideration of the landlord entering into the said agreement dated April 8, 1929, hereto annexed, and the sum of One (1) Dollar to each of us paid and other good and valuable considerations, receipt of which is hereby acknowledged, we do hereby jointly and severally covenant and agree, to and with 11 West 42nd Street, Inc., the said landlord above named, and the landlord's legal representatives, successors and assigns, that if default shall at any time be made by Albert De Windt, the said tenant, in the payment of the rent, or the performance of the covenants contained in the said lease dated February 1, 1929 and/or the said agreement dated April 8, 1929, hereto annexed, on the tenant's part to be paid and performed or should the landlord institute summary proceedings or any other action or proceedings for the recovery of the possession of the said premises, by reason of the nonpayment of the rent or otherwise, that we jointly and severally will well and truly pay the said rent or any arrears thereof, or any other sum or sums provided to be paid by the tenant under any of the terms of the said lease dated February 1, 1929, and the said agreement dated April 8, 1929, hereto annexed, that may remain due unto the said landlord or that may become due, and any or all damages that may arise in consequence of the non-performance of said covenants, or any of them, without requiring notice of any such

default from the said landlord, and without requiring any proceedings to be taken against said tenant for the collection of said amount or amounts. This guarantee agreement is intended to apply to and to affect both the said lease dated February 1, 1929, and the said agreement dated April 8, 1929, hereto annexed.''

After the execution of this written agreement and guaranty the lessee, De Windt, took possession of two additional rooms, Nos. 1446 and 1450, and paid the rent called for under this new agreement at irregular intervals until some time in September, 1929. The September rent not being paid, the corporation instituted proceedings to dispossess De Windt from the leased premises. Judgment was rendered in favor of the plaintiff in said action, and De Windt was evicted under said judgment and possession of the leased premises was restored to the corporation. On acquiring possession of the property under the judgment of eviction against De Windt, the corporation advertised it for rent and made all reasonable efforts to secure tenants for the property. In this it was only partially successful. Part of the time all the property was vacant, and at other times the corporation was successful in renting only a portion of it. In doing so, it was necessary for it to make certain alterations in the arrangement of the rooms covered by the lease so that they might be rented to, and occupied by, two or more tenants carrying on separate lines of business. The right to do so was expressly authorized by the terms of the lease. The lessee was given credit for all amounts received by the lessor as rental of the property, or of any part thereof, from the time it took possession thereof after the judgment of eviction against the lessee, until the termination of the lease. After giving the lessee credit for all payments of rent received during this period of time, a substantial amount was claimed by the lessor to be due and unpaid from the lessee, and as the defendant had guaranteed to ''pay the said rent or any arrears thereof, or any other sum or sums provided to be paid by the tenant under any of the terms of the said lease dated February 1, 1929, and the said agreement dated April 8, 1929, hereto annexed,'' this action was brought to recover said amount.

Prior to the commencement of this action the lessor had assigned to the plaintiff its claim against the defendant. The action, as we have seen, is against one of the guaran-

tors only. As the guaranty was joint and several, the action would lie against either or both of the guarantors. The amount claimed by plaintiff under her amended complaint to be due and unpaid under the lease is the sum of $11,835.17 together with interest on each installment "going to make up said amount at the rate of seven per cent (7%) per annum from the date upon which each installment was due and payable respectively, said interest to be computed up to and including the date of entry of judgment herein," and for costs and general relief. The amended complaint under which the action was tried, like the original complaint, is in two counts. In one count it is alleged that the total amount due under the entire lease from September 1, 1929, to the termination of the lease on April 1, 1934, was $28,000 and that the lessor had received from reletting the premises the sum of $16,-164.83, leaving a balance due and unpaid of $11,835.17. The second count of the amended complaint is practically a restatement in a different form of the cause of action set out in the first count. The amount claimed in each count is the same. The only difference between the original complaint and the amended complaint is in the amount claimed to be due and unpaid. In the original complaint this amount is alleged to be $12,233.29 and in the amended complaint this amount is given as $11,835.17. The original complaint was filed March 30, 1937. [There is a slight difference of $2 between the allegations of the pleading and the evidence. This discrepancy will later appear in the discussion of certain issues in the case. This slight discrepancy is not material to any issue before us.]

Defendant by his answer to the amended complaint makes practically a general denial of all the allegations of the amended complaint; claims that the action is barred by the provisions of section 337 of the Code of Civil Procedure; and sets up a number of affirmative defenses which will be given further consideration later in this opinion. At the close of the trial the case was submitted to the jury upon the pleadings, the evidence introduced in support thereof and the instructions to the jury. The jury returned a verdict in favor of the defendant, upon which the court entered its judgment, and from which the plaintiff has appealed, and in support thereof makes the following contentions:

(1) That the evidence is insufficient to support the verdict.

(2) That the defense of the statute of limitations is unavailable to defendant.

(3) That the giving of Instruction No. 27 was prejudicial error.

(4) That the judgment should be reversed with directions to enter judgment for the plaintiff.

The evidence on the part of plaintiff purports to show the due execution of the lease and the agreement by the lessor and the lessee, and the execution of the guaranty of the terms of the lease by the defendant, along with his co-guarantor, Comstock; that the lessee, De Windt, took possession of the leased premises pursuant to the terms of the lease and agreement; that he defaulted in the September, 1929, rent, and due to said default was evicted from the premises by the lessor; that upon such eviction the lessor repossessed the leased premises, and rented such parts thereof during the balance of the term of the lease, as it was able to obtain tenants therefor; and that after giving credit to the lessee for all amounts received by the lessor for the rental of said premises after the lessor took possession thereof, there remained due and unpaid at the commencement of this action from the lessee according to the lease the sum of $11,833.17, besides interest and costs.

Defendant offered no evidence in his defense except his own testimony. He did not purport to have any personal knowledge whatever of any dealings between the lessor and the lessee, after his guaranty had been executed and delivered; neither did he purport to know anything about the occupancy of the leased premises after the guaranty was executed. He visited the property only twice, on one occasion in the latter part of the year 1929. He did not see De Windt on that visit and he was informed either by the elevator man or the directory that De Windt had moved. He did not know whether the rooms were vacant or not, but he did not believe they were. His other visit to the premises was after the commencement of this action.

Defendant contends however, that certain evidence in plaintiff's behalf was erroneously admitted, and that when this erroneously admitted evidence is excluded, the record fails to establish plaintiff's case. This criticism of plaintiff's evidence is particularly aimed at the testimony of the witness Scala, whose deposition was taken and introduced in evidence

by the plaintiff at the trial of this action. ▮ Mr. Scala testified that he had charge of the rent and collection departments of the lessor, 11 West 42nd Street, Inc., and that the gross amount unpaid under the lease was $28,000 and the gross amount of all re-rentals and moneys received in connection with the leased premises was $16,166.83.

Evidence in proof of these two amounts was given by Mr. Scala as shown by the record as follows:

"Q. Will you state the amount unpaid?

"A. The amount unpaid under this lease in full is $11,-833.17.

"MR. BREWER: Objected to and move to strike as a conclusion of the witness, incompetent, irrelevant and immaterial, no showing that he had any authority to show what the amount unpaid was.

"THE COURT: Be overruled. Denied.

"Q. What was the gross amount unpaid?

"A. $28,000.

"Q. What was the gross amount of all re-rentals and moneys received in connection with premises 1446-50, and 1454-56 between September 1, 1929 and April 30, 1934?

"A. $16,166.83."

In support of defendant's contention that the question calls for the conclusion of the witness, he cites *Parker* v. *Otis*, 130 Cal. 322, 331 [62 P. 571, 927, 92 Am.St.Rep. 56], which holds that the question "Do you owe Otis & Co. any money?" is improper as it calls for a conclusion of the witness. But the question asked the witness Scala related to the amounts "paid" and "unpaid." Such questions call for facts and not conclusions. (See *Krieger* v. *Feeny*, 14 Cal.App. 538 [112 P. 901]; 20 Cal.Jur. p. 947, § 28; 21 Cal.Jur. p. 35, § 19.)

▮ Defendant devotes many pages of his briefs and petitions to his attack upon the evidence of the witness Scala fixing the amounts received by the lessor, after taking possession of the leased premises upon the eviction of the lessee. He particularly assails his own Exhibit A so marked when received in evidence at the trial of this action. This exhibit was offered in evidence by the defendant, and marked Exhibit I for identification at the taking of the deposition of Mr. Scala. At the trial the defendant renewed his offer and the exhibit was admitted in evidence as defendant's Exhibit A without objection, and is entitled "Statement of Account,

Albert De Windt, Tenant, George W. Stratton and Stan E. Comstock, guarantors'' with a description of the leased premises. It purports to show the amount due under the lease from the date the lessor took possession of the leased property after the tenant's eviction until the end of the term, four years and eight months at $6,000 per year, amounting to the sum of $28,000. It further purports to show the amount received during this same period of time by the lessor as rental of the property from tenants procured by him after taking possession of the leased premises. This amount as shown by the exhibit was $16,166.83. The difference between these two amounts is $11,833.17, the amount claimed by plaintiff to be due and unpaid under the terms of the lease. Defendant now contends that the witness Scala knew nothing about the books of the lessor company, nor did he have any personal knowledge of the figures constituting said exhibit, and that his answers were based solely upon the figures contained in that exhibit. This contention might possibly have some merit, were it not for the fact that the defendant himself, both at the taking of the deposition of Scala and at the trial of this action, offered in evidence this statement of account, and the same was admitted in evidence without objection. This exhibit having been introduced in evidence by the defendant, he is bound by its provisions. (*Reclamation District No. 70* v. *Sherman,* 11 Cal.App. 399, 419 [105 P. 277]; *Groves* v. *Jones,* 252 Mich. 446, 448 [233 N.W. 375].)

Furthermore, after this exhibit had been offered and received in evidence and at the close of the examination of Mr. Scala, he was asked by defendant's counsel the following questions, to which he gave the following answers:

''Q. So from tenants who occupy the same premises originally occupied by tenant De Windt, subsequent to the date of his dispossession, you have collected a total amount of how much money up to April 30, 1934?

''A. $16,166.83.

''Q. Based upon your records, Mr. Scala, over that same period of time how much have you charged up against Mr. De Windt as the gross amount?

''A. $28,000.00.

''Q. And crediting what you have collected, $16,166.83,

you claim, I take it, that there is a balance due the 11 West 42 Street Inc. of how much?

"A. $11,833.17.

"Q. And does that $11,833.17 represent rent not paid?

"A. It represents the amount due from Mr. De Windt which has not been paid.

"Q. For rent only?

"A. Yes."

Defendant next contends that the jury could have entirely disregarded the testimony of Scala as he was an employee of the plaintiff's assignor and because his evidence was not clear, but was incompetent and contradictory. As we have before noted, proof of the amount due plaintiff under the terms of the lease did not depend entirely upon the testimony of Scala, for the reason that defendant introduced in evidence the statement of account as his Exhibit A, and was therefore bound by its provisions. Defendant offered no evidence that in any manner discredited the statement of account or the evidence just quoted from the testimony of Mr. Scala. ■ However, plaintiff introduced in evidence as her Exhibits 4 and 5, photostatic copies of the ledger of the lessor, which defendant contends show two items aggregating the sum of $5,700.04, for which no credit has been given Mr. De Windt on his rent account. We confess our inability to decipher these ledger sheets and satisfy ourselves as to their precise meaning in respect to the two items which the defendant questions. No explanation of their meaning is found in the record before us, nor does plaintiff's counsel attempt to explain either of these. Mr. Scala was not asked any question in regard to those two particular items. Defendant made no claim of any credit based upon these two items until his petition for a hearing in this court was filed. At the most, even if they should be allowed in defendant's favor, they would only reduce the amount due on the lease, and would not justify an affirmance of the judgment in defendant's favor, as there would still be a considerable amount due as rental under the lease after deducting the amount of these two items. However, it does not appear that this point was raised at the trial of this action, nor in the District Court of Appeal. Under these circumstances the question therein involved may not be considered by this court (2 Cal.Jur. p. 234; 2 McKinney's New Digest, p. 523, and cases cited in each

of these publications) and for that reason we expressly decline to consider it.

In addition to the foregoing contention the defendant claims that there are other grounds why the evidence is sufficient to support the verdict of the jury. Some of these contentions are so technical and lacking in merit as not to justify any special attention. Others however, are of sufficient substance to warrant special discussion. In the main these contentions are put in issue by the affirmative defenses set forth in defendant's answer.

■ The first of these contentions is that the lease was not physically attached to the guaranty at the time defendant signed the latter document, and therefore he is released from any liability under the guaranty. The agreement of guaranty expressly refers to both the lease of date February 1, 1929, and the agreement of date April 8, 1929, and states that "This guarantee agreement is intended to apply to and affect both the said lease dated February 1, 1929, and the said agreement dated April 1, 1929, hereto annexed." It was signed by the defendant and his co-guarantor, Stanley E. Comstock. Defendant had prior to signing the guaranty been informed of its purpose. He knew at the time of signing the guaranty that the lessor in said lease had required that it be guaranteed before it would deliver the lease. To now permit the defendant after signing the guaranty, which recited that the lease and agreement were annexed thereto, to deny that they were so annexed would be to enable him to perpetrate a fraud of a most flagrant character. To put it mildly would be to hold that he is estopped to deny the plain and explicit terms of the solemn document which he voluntarily executed.

■ Estoppel may be defined to be a bar by which a man is precluded from denying a fact in consequence of his own previous action which has led another to so conduct himself that, if the truth were established, that other would suffer. (10 Cal.Jur. p. 611.)

■ Defendant further contends that the judgment should be affirmed because he was never notified of his acceptance by the lessor as a guarantor of the lease. The guaranty was absolute in form and bound defendant without notice of his acceptance. *(Thorpe* v. *Story,* 10 Cal.2d 104, 117-118 [73 P.2d 1194] ; *Union Bank* v. *Coster,* 3 N.Y. 203, 212 [53 Am. Dec. 280] ; *American Woolen Co.* v. *Moskowitz,* 159 App.Div.

382 [144 N.Y.S. 532].) ■ Neither was defendant entitled to notice of the tenant's default. (*American Taximeter Co.* v. *Smith,* 199 N.Y.S. 578, 579; *Webel* v. *Clark,* 29 Misc. 329 [60 N.Y.S. 516]; *Brown* v. *Curtiss,* 2 N.Y. 225.) This is particularly so in the present case as the defendant's agreement of guaranty was to be performed "without requiring any notice of any such default from said landlord."

■ Defendant was not released from his liability under said guaranty by the lessor's altering the leased premises to suit the convenience of new tenants secured by the landlord after repossessing the leased premises. The lessor's right to make such alterations was expressly provided for in the lease. Defendant relies upon the case of *Salomon* v. *Cawston Ostrich Farm,* 43 Cal.App. 465 [185 P. 314]. There the lease contained no provision as does the lease now before us, permitting the lessor, on retaking possession of the leased premises, to make any physical changes and alterations. In that case, which was an action by the landlord against the guarantor of a lease of real property in the State of New York, we find it stated that "In New York, as well as in California, the obligations of the guarantor are strictly construed. Any change made by the person to whom performance is due in the subject to which the guaranty applies, without the knowledge or consent of the guarantor, releases the latter." Had the present lease contained no provision permitting changes and alterations in the building, the statement of the law just quoted would no doubt be controlling, but such is not the case. The language of the lease in respect to changes and alterations reads as follows: "In any such case or in any other case in which the Landlord shall resume possession of the demised premises by summary proceedings or otherwise, the Landlord at its option may repair, subdivide, alter or change the character of the demised premises from time to time as the Landlord shall deem best, may let the demised premises or any part or parts thereof for the whole or any part or parts of the residue of the original term hereof, and receive the rents therefor." With this provision in the lease it cannot be successfully contended that the changes and alterations which were made by the landlord were without the knowledge and consent of the lessee. ■ The guaranty having been made at the time the agreement extending the lease was executed, the three instruments must for the purpose of interpretation of their meaning be considered as one

instrument. (*Catskill Nat. Bk.* v. *Dumary,* 206 N.Y. 550 [100 N.E. 422, 424]; *Reios* v. *Mardis,* 18 Cal.App. 276, 281 [122 P. 1091].) The defendant guarantor must therefore be deemed to have assented to their provisions. (*Smith* v. *Molleson,* 148 N.Y. 241 [42 N.E. 669, 672]; see, also, *W. P. Fuller & Co.* v. *Alturas School District,* 28 Cal.App. 609, 612-613 [153 P. 743].) In *American Trust Co.* v. *Jones,* 130 Cal.App. 651, 655 [20 P.2d 346], we find it stated that "When, as here, the contract provides in advance for changes, substitutions, etc., they may be made in accordance with the terms of the guaranty and such acts do not release the guarantor."

A further contention is raised by defendant in support of the judgment in his favor that there is no proof that the landlord gave notice of intention to relet the leased premises for tenant's account and that such reletting was for a term greater than the lease, and accordingly the tenant and defendant were released thereby. This defense does not appear to have been made at the trial of the action. No instruction was asked or given upon this question. No reference to this defense is made in defendant's brief or in the petition for a rehearing filed in the District Court of Appeal, or in his petition for a hearing in this court. The first time this point was raised as near as we can ascertain from the record before us was in defendant's answer to plaintiff's supplemental brief filed herein after argument. Under the rule hereinbefore announced the absence of evidence that the landlord gave notice to the tenant of his intention to relet the leased premises will not be considered.

As we view the record in this case as discussed above, we find nothing therein which would justify the jury in returning a verdict in favor of the defendant, and it must therefore be held that the verdict finds no support in the evidence unless the questions hereinafter discussed lead to a different conclusion.

We now come to the consideration of the statute of limitations. Defendant purported to plead the statute of limitations. The plaintiff claims that the statute is not available to defendant. The solution of this problem depends upon two contingencies—first, whether the statute was properly pleaded, and if not, should the court have permitted the defendant to so amend his answer as to properly plead the statute; and second, if the statute was properly pleaded or

the plea thereof could have been amended so as to properly present such a plea, was it a bar to plaintiff's cause of action?

Defendant claims that plaintiff's cause of action is barred by the provision of section 337 of the Code of Civil Procedure. His plea of the statute in his fifth separate defense in answer to plaintiff's amended complaint is as follows: "That the said amended complaint, and each of the causes of action therein, is barred by the provisions of the Statute of Limitations as found in section 337 . . . of the Code of Civil Procedure."

Section 458 of the same code provides that the statute of limitations may be pleaded by stating "generally that the cause of action is barred by the provisions of section—(giving the number of the section and subdivision thereof, if it is so divided, relied upon) of the Code of Civil Procedure." Section 337 of the Code of Civil Procedure contains two sections numbered 1 and 2. Subdivision 1 applies to contracts and similar obligations; subdivision 2 applies to book accounts, accounts stated, and current accounts.

Section 458 of the Code of Civil Procedure was first construed by this court in the case of *Wolters* v. *Thomas,* 3 Cal. Unrep. 843 [32 P. 565]. It was there held that a plea of the statute of limitations, alleging that a cause of action is barred by the Code of Civil Procedure, section 339, is insufficient, since that statute contains several subdivisions. That case was followed by two decisions of the District Court of Appeal, *Overton* v. *White* (1937), 18 Cal.App.2d 567 [64 P.2d 758, 65 P.2d 99] and *Hart* v. *Slayman* (1939), 30 Cal.App.2d 556 [86 P.2d 861]. In each of those cases the section under consideration was 337, the same section of the code relied upon by the defendant in the present action. The section relied upon was pleaded, but no subdivision of the section was stated. The court in the case of *Overton* v. *White, supra,* went rather fully into the question as to whether the statute was correctly pleaded. After quoting quite fully from the case of *Wolters* v. *Thomas, supra,* the court held as follows: "In the instant case only the provisions of subdivision one of section 337 were applicable to the facts of the case. That section contains two subdivisions. The answer did not refer to the proper subdivision. It was not amended in the trial court. The objection of the insufficiency of the pleading was raised in the trial court. For these reasons the cases cited by defendant are distinguishable and are not controlling

here. As the case of *Wolters* v. *Thomas, supra,* cannot be distinguished in principle from the instant case, and as it has not been overruled or modified, we feel it is controlling here, and consequently hold that the provisions of section 458 of the Code of Civil Procedure must be strictly applied, and that the attempted plea of the statute of limitations by defendant was insufficient to raise that issue in the trial court.

"It necessarily follows that the answer raised no issue and presented no defense. Therefore, the trial court properly granted plaintiff's motion for judgment on the pleadings, and the judgment must be affirmed unless the trial court committed prejudicial error in refusing to permit defendant to amend his answer." A petition for hearing by this court was denied.

The case of *Hart* v. *Slayman, supra,* was decided by the same court two years after the decision in *Overton* v. *White.* It followed the latter case and its conclusion was that (p. 558) "As section 337 of the Code of Civil Procedure contains two subdivisions, and as Slayman pleaded the section without pleading the subdivision relied upon by him, his answer did not present the defense of the bar of the statute of limitations, and that defense was waived."

While the plaintiff demurred to defendant's answer to the amended complaint, she did not demur to defendant's fifth separate defense, which, as we have seen, purported to set up the statute of limitations as a defense, nor did she in any manner by her demurrer raise the sufficiency of defendant's answer to the amended complaint to properly plead the statute of limitations. In *Churchill* v. *Woodworth,* 148 Cal. 669 [84 P. 155, 113 Am.St.Rep. 324], where the defendant attempted to plead the bar of section 339 of the Code of Civil Procedure, a section of the code having two subdivisions, without stating the subdivision relied upon, it was held that the failure to raise the sufficiency of the plea of the statute was waived by failure to demur to such an answer. In so holding the court announced the rule in such cases as follows: (p. 676) "No demurrer was interposed to the answer, which, for the purposes of the trial, was assumed to sufficiently present the defense, and the court made its findings thereon. Under these circumstances, we are satisfied that the attempt to plead subdivision 1 of section 339 should not be treated as a nullity, and that the objection to the manner of pleading it was waived by the failure of plaintiffs to urge such

objection in the trial court." In *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 773 [128 P.2d 665] on the authority of *Churchill* v. *Woodworth,* it was held: (p. 773) "The rule as to the proper plea of the statute of limitations is not self-operating but depends for its enforcement on the diligence of the plaintiff in objecting to the insufficiency of the plea either by demurrer to the answer or by timely objection at the trial."

While, as we have seen, the plaintiff failed to demur to the fifth special defense in defendant's answer, which purported to set up the statute of limitations as a bar, she did object during the trial to the introduction of any evidence in support of said defense on the ground that the statute as pleaded presented no defense to said action. Again near the close of the trial the plaintiff asked to be heard upon the question of the statute of limitations, whereupon the trial judge stated that he did not think the matter of the statute of limitations could "be raised or the statute tolled. Therefore I am going to instruct the jury that the statute of limitations has no bearing on this matter." Counsel for defendant then asked the court if his intended action just stated was based upon the defect in the pleading, and the court replied: "No, that is based upon the entire record." Counsel for defendant then asked to amend this pleading "to designate the particular part of Section 337 intended to apply," but upon the objection of the plaintiff the request of defendant was denied. It thus appears that the plaintiff made timely objection to defendant's plea of the statute. Ordinarily we think the objections of plaintiff to the insufficiency of defendant's plea of the statute as just set forth rendered said plea ineffective for any purpose. In *Overton* v. *White, supra,* 18 Cal.App.2d 567, in considering an identical situation as that before us, the court held: (p. 574) "The answer did not refer to the proper subdivision. It was not amended in the trial court. The objection of the insufficiency of the pleading was raised in the trial court. . . . It necessarily follows that the answer raised no issue and presented no defense."

It does not appear in this last-cited case that any request was made to amend the answer, while in the present case such a request was made and denied by the court. A refusal by the court for permission to amend an answer for the purpose of interposing the defense of the statute of limitations has

been held not to be an abuse of the court's discretion. (*Rudd* v. *Byrnes,* 156 Cal. 636 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134]; *Cooke* v. *Spears,* 2 Cal. 409 [56 Am.Dec. 348]; *Wells, Fargo & Co.* v. *McCarthy,* 5 Cal.App. 301 [90 P. 203].) In the first of these three cases, it was held: (p. 638) "This court, very early in its history, established the rule that the refusal of leave to plead the bar of the statute of limitations by way of amendment to an answer already filed will not be regarded as an abuse of discretion, unless it is made to appear that the amendment will be in further-ance of justice."

In the early case of *Cooke* v. *Spears, supra,* 2 Cal. 409, we find the rule stated as follows: (p. 412) "If the statute of limitations had been pleaded in the first instance, there would have been no ground to have objected to it, and the Court would have had no legal discretion to have ordered it to be stricken out. But having been omitted, when the application to amend was made, the first question certainly presented was, Will it be in the furtherance of justice? Such is the language of the statute. Such clearly was the intent of the law."

Those authorities, and particularly the language in *Cooke* v. *Spears* just quoted, hold that the trial court may in its discretion *and in furtherance of justice* deny applications to amend an answer by setting up the bar of the statute of limitations. However, the trial court in the instant action did not deny defendant's application to amend on the ground that it would not be in the interest of justice to permit such an amendment, but because "the statute of limitations has no bearing upon this case." In line with this statement that the statute of limitations has no bearing upon this case, the court later instructed the jury "that the statute of limita-tions is not an issue in this case and that you are to disregard the defendant's attempt to plead the statute of limitations as a defense." It thus appears that the trial court did not base its denial of defendant's application to amend his answer on the ground that such amendment would not be in further-ance of justice, but upon the ground that the statute of limi-tations had no bearing upon the case.

Whether the statute of limitations was an issue be-fore the court and therefore had a bearing upon the case de-pended upon the terms of the lease, and the nature and char-

acter of the present action. It is contended by plaintiff that by the terms of the lease the lessor could wait until the termination of the lease, and then sue for damages for the lessee's failure to comply with the terms of the lease, or the lessor was given the right to sue the lessee after the former had taken possession of the leased premises as the monthly payments became due. Whether these two independent remedies were available to the plaintiff becomes immaterial and of no consequence in view of the nature and character of the present action.

The amended complaint as well as the original complaint, besides alleging the execution and delivery of the agreement of guaranty, also alleges the execution of the lease and the agreement of April 8, 1929; the breach of the terms of the lease and agreement by the defendant, the repossession of the leased premises by the lessor, and the reletting of certain portions thereof, after making alterations under the terms of the lease. By Paragraph VIII of the first cause of action it is alleged:

## VIII

"That under and by virtue of the terms of said lease and said agreement referred to in Paragraphs II and IV respectively hereof, a monthly installment of Five Hundred Dollars ($500) as rental became due to and owing to 11 West 42nd Street, Inc., a corporation, on September 1, 1929, and additional installments of Five Hundred Dollars ($500) each have fallen due on the first day of each and every month thereafter, up to and including the first day of April, 1934, or a total amount in the sum of Twenty-eight Thousand Dollars ($28,000)."

It is then alleged that the sum of $16,166.83 had been received by reason of reletting, and that the same has been credited to defendant's account.

Paragraphs X and XII of said first cause of action are as follows:

## X

"That there is now due, owing and unpaid from defendant herein, under and by virtue of the terms of said Exhibit 'A' and said lease and said agreement, referred to in Paragraphs II and IV respectively hereof, the sum of Eleven Thousand Eight Hundred and Thirty-five and 17/100 Dollars ($11,835.17) on account of rental as aforesaid, together

with interest on each installment going to make up said amount at the rate of seven per cent (7%) per annum from the date upon which each installment was due and payable respectively.''

### XII

''That at all times herein mentioned, said lease and said agreement, referred to in Paragraphs II and IV respectively hereof, were in full force and effect; that at all times herein mentioned, said Exhibit 'A' was and still is in full force and effect; that said 11 West 42nd Street, Inc., a corporation, has performed all the terms and conditions on its part to be performed under and by virtue of the terms of said lease and said agreement referred to herein.''

Somewhat similar allegations are made in the second cause of action. The prayer of the amended complaint is for judgment in the sum of $11,835.17 together with interest on each installment at 7 per cent per annum from the date of each installment respectively. The pleadings of plaintiff contain no allegations of damage whatever. It would be difficult indeed, allowing the utmost liberality in its construction, to hold that such a pleading is one sounding in damages and not upon contract. What different language could be used in order to state a cause of action upon a contract? It is alleged in the amended complaint that there is due and unpaid ''interest on each installment going to make up said amount [$11,835.17] at the rate of seven per cent (7%) per annum from the date upon which each installment was due and payable respectively.'' No interest would be payable on any of these installments of rent until the particular installment became due, that is, until it matured, and an action to collect the same would be barred four years after its maturity.

In the case of *Tillson* v. *Peters*, 41 Cal.App.2d 671 [107 P.2d 434], a similar pleading was before the court. That action, like the present one, was to collect the balance due on the lease of real property. It was there contended, as plaintiff contends here, that his action was not barred as it was brought within four years after the termination of the lease. In answer to the contention, at pages 674, 675 of the opinion the court said: ''If the rent became due in monthly installments, which the uncontradicted evidence shows that it did, the right of action accrued upon each installment of rent when it became due, and the statute of limitations began to

run on each monthly installment of rent from such dates. (*Lee* v. *DeForest*, 22 Cal.App.2d 351, 360 [71 P.2d 285]; Civ. Code, § 1947; 15 Cal.Jur. 723, § 133.) The plaintiff, no doubt, alleged that $1,625 rental for the premises was due for the five-year period from April 1, 1931, to April 1, 1936, so as to avoid the effect of the statute of limitations. If that were all that he alleged, the complaint might be deemed to state a good cause of action in *assumpsit*, on the theory that the rent was really not due until the end of the term specified. But he further alleges that there was $700 interest due on *deferred installments of rent*, which refutes the theory that the rent was due only at the termination of the contract.'' The amended complaint in this case is more specific in its allegations than was the pleading in the cited case, for, as we have seen by Paragraph VIII, it is expressly alleged that monthly installments of rent became due and owing on each and every month after September 1, 1929, the month during which the lessor repossessed the leased premises.

From the foregoing we can arrive at no other conclusion than that the plaintiff by her present action seeks to enforce the obligation of the tenant, after the landlord repossessed the leased premises, to pay at the times fixed by the lease the several installments of rent called for by the terms of the lease. These installments of rent, as noted above, would be barred by the statute of limitations four years after their respective maturity, provided the statute had been properly pleaded. The statute of limitations was therefore an issue in the case, and if properly pleaded would have been a bar to the recovery of any installment of rent which accrued more than four years before the commencement of this action. An attempt had been made to plead the statute. ▮ ´Upon plaintiff's objection to the plea of the statute, the defendant asked leave to amend his plea. It was within the discretion of the court to grant or deny said request, basing its action upon whether the application to amend would be in furtherance of justice. Instead of exercising such discretion, as we have seen, the court denied the application on a ground which we have held to be erroneous and untenable. Its action therefore cannot be approved. As the judgment in this case for other reasons must be reversed and the case remanded for a new trial, the court upon a retrial may then rule upon the defendant's application to amend its plea of the statute of limitations, and

in so ruling decide whether in the opinion of the court the granting of said application would be in furtherance of justice.

 We now come to the consideration of Instruction No. 27 given by the court at the request of the defendant. This instruction purports to inform the jury as to the rules of law of the State of New York, the state where the contract of guaranty involved was executed as well as the lease and agreement annexed to the guaranty of which laws the courts of this state take judicial notice. Said instruction consists of fourteen different rules of law. While from a strictly legal approach each of these rules of law is correctly stated, in our opinion probably only one of them is applicable to the facts in this case. The first of these rules reads as follows: "The guarantor is discharged from liability if there is any alteration in the contract guaranteed." Nos. 2 and 4 of these rules as set forth in this instruction are along the same line as Rule No. 1 just quoted. We agree with plaintiff that "one searches the record in vain to discover even the remotest hint of any modifying of the contract between the landlord and De Windt." The same observation may be made in respect to Rules Nos. 6 (extension of time for performance discharges guarantor), No. 7 (reduction of rental payments by landlord discharges guarantor), No. 9 (assignment of lease by lessee discharges guarantor), No. 13 (unnecessary delay upon part of creditor in bringing action for money due discharges guarantor), and No. 14 (a debtor has the right to direct how payments on debt shall be applied). Rules Nos. 5 and 8 refer to a change by the person to whom performance is due in the subject to which the guaranty applies without the knowledge of the guarantor, or which substitutes a guaranty of another's contract releasing the guarantor from liability. We find not a scintilla of evidence which involves either of these rules. With the exception of Rule 3, which provides that contracts of guaranty are strictly construed in favor of the guarantor, we find no evidence in the record of this case which relates to any of the various propositions of law set forth in this instruction or which would make any of them applicable to any issue before us.

The defendant made but a feeble attempt to justify the giving of this instruction. He maintains however, that even if the instruction was erroneous, it was not prejudicial to the

plaintiff. In this claim we cannot agree. It will be noted that the instruction refers in at least two instances "to any change in the subject to which the guaranty applies" under the conditions therein set out, which could release the guarantor. The evidence shows that changes and alterations were made in the leased premises, but they were permitted by the lease. This instruction also contains a statement that reduction of rental payments by the landlord discharges the guarantor. The evidence shows that the landlord was forced to lower the rent on repossession of his property, but that the right to do so was expressly given him by the terms of the lease. Under these conditions, as well as others of like kind which might be mentioned, we think the jury may well have been confused by this instruction and misled into believing that the defendant was released from his contract of guaranty by the acts of the landlord subsequent to the latter repossessing the leased premises. ▇ Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence, and the giving of it constitutes prejudicial error if it is calculated to mislead the jury. (24 Cal.Jur. p. 830, § 95, and the authorities there cited.)

▇ Defendant further contends that this court should refuse to consider any error in the giving of said instruction for the reason that plaintiff failed to comply with subdivision 3 of Rule VIII of the Rules of this Court then in effect, which required that when "instructions given to a jury are attacked as erroneous, all other instructions given, bearing upon that subject, must be printed in full in the appellant's brief." As already stated, Instruction No. 27 relates entirely to the law of the State of New York, which the court in this action was required to take judicial notice of, and which, if applicable to any issue in the present action, "the jury was bound to accept as given to you by this court." The basis for the giving of this instruction was the fact that the contract of guaranty, as well as the lease and agreement, was executed in the State of New York. While plaintiff in her opening brief did not print any other instructions, the defendant has not called to our attention any other instruction which the court gave bearing upon the law of the State of New York upon any question involved in this action. We have examined the instructions given by the court in this action, and we find no instruction except Instruction No. 27 which in any way refers to the laws of the State of New York, or bears

upon "the duty of the jury to accept them as given to you by the court." In these circumstances we do not feel that the plaintiff should be precluded from requiring the court to consider the error in said instruction.

In view of what has been said in respect to the plea of the statute of limitations, it is apparent that in the condition in which the case now stands, no direction should be made at this time to the trial court requiring it to render judgment in favor of the plaintiff, even if this court had the power in this case which was tried by a jury, to make such an order. If the trial court should grant leave to the defendant to amend its answer by stating the subdivision of section 337, Code of Civil Procedure, upon which he relies as a bar to plaintiff's cause of action, it would then be necessary to determine what portions of plaintiff's claim are barred by the statute. On the other hand, if the trial court should deny defendant's application to amend its answer, a different result entirely would follow. Whatever determination we might make as to the power of the court to direct a verdict in an action of this character would be without the issues as now before the court. For this reason it is proper that the decision on this question be reserved until it is before us as a justiciable issue.

Plaintiff also made a motion for a judgment notwithstanding the verdict of the jury. Assuming that she had previously made a proper motion for a directed verdict which the court denied, due to the condition of the record in respect to the plea of the statute of limitations it was not error to deny said motion. Plaintiff has attempted to appeal from the order denying her motion for a judgment notwithstanding the verdict. As no appeal lies from said order, the purported appeal therefrom is dismissed.

The judgment is reversed.

Shenk, J., Edmonds, J., and Carter, J., concurred.

SCHAUER, J.—I concur in the judgment of reversal, and generally in the opinion prepared by Mr. Justice Curtis, but subject to the following qualifications:

1. I am not in accord with the discussion relative to the discretion of the trial court to *either* grant or *deny, upon the record in this case,* defendant's request for permission to amend the form of his pleading of the statute of limitations

as a defense. His fifth separate defense alleges "That the said amended complaint, and each of the causes of action therein, is barred by the provisions of the Statute of Limitations as found in Sections 337 and 361 of the Code of Civil Procedure." This plea does not state the applicable subdivision of section 337 as required by section 458 of the same code. (Section 361 is not here involved.) But the latter section (§ 458) is merely permissive and directory in form. Recognizing the strict construction and application accorded that section in *Wolters* v. *Thomas* (1893), 3 Cal.Unrep. 843 [32 P. 565], *Overton* v. *White* (1937), 18 Cal.App.2d 567 [64 P.2d 758, 65 P.2d 99], and *Hart* v. *Slayman* (1939), 30 Cal. App.2d 556 [86 P.2d 861], it still does not follow that the pleading of the section by number without specification of the pertinent subdivision is a complete nullity. In *Churchill* v. *Woodworth* (1906), 148 Cal. 669, 676 [84 P. 155, 113 Am.St. Rep. 324], section 339, which contains two subdivisions, was pleaded without specification of the subdivision relied on. No objection to the pleading, by demurrer or otherwise, was urged in the trial court. It was held that objection to the form or sufficiency of such pleading could not be raised for the first time upon appeal and that such pleading "should not be treated as a nullity." In *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942), 20 Cal.2d 751, 773 [128 P.2d 665], Mr. Justice Curtis, speaking for this court, cited the Churchill case and declared, "The rule as to the proper plea of the statute of limitations is not self-operating but depends for its enforcement on the diligence of the plaintiff in objecting to the insufficiency of the plea either by demurrer to the answer or by timely objection at the trial."

In the case at bar plaintiff demurred to the answer, attacking specifically the first, second, sixth, eighth, ninth, tenth, eleventh, twelfth, and thirteenth separate defenses. No objection by demurrer was taken to the form or substance of the fifth separate defense above quoted. After the trial was entered upon, plaintiff objected orally to consideration of that defense. Under the circumstances, since the pleading of the statute was not a nullity, the objection necessarily went to the *form* of the pleading rather than, strictly, to its substance. In response to such objection defendant asked leave to amend the pleading by inserting the subdivision he relied upon. This was not a request for leave to amend to *initially*

plead the statute as a defense—it had already been pleaded sufficiently in the absence of objection—but was a mere request, as timely as was the objection, to amend the form to cure the defect pointed out by the objection. The trial court refused to permit the amendment and refused to submit to the jury the issues raised by the plea. Both rulings were in my opinion erroneous.

In making such rulings the court disavowed the defect in the pleading as a ground thereof and declared that it so ruled because "the statute of limitations has no bearing upon this case." That position is untenable. The statute pleaded appears to be a meritorious defense to at least a part of the cause of action sued upon. The court should have considered defendant's request for leave to amend upon its merits, and, in the circumstances shown, it was an abuse of discretion not to grant such request and thereupon submit the issues to the jury.

2. By concurring generally in the opinion otherwise than as stated above I intend no implication that the contract sued upon gives to the plaintiff an option to await the end of the term of the lease and then to sue for damages for breach of the lease. The cause of action pleaded, as stated by Mr. Justice Curtis, admits of "no other conclusion than that the plaintiff by her present action seeks to enforce the obligation of the tenant [and of the guarantor], after the landlord repossessed the leased premises, to pay at the times fixed by the lease the several instalments of rent called for by the terms of the lease." Therefore the claim of the plaintiff, urged in her briefs, that she had such an option, and the contrary contention of the defendant that under the provisions of paragraph twenty-first of the lease the several installments of rental, insofar as they were delinquent, became due absolutely and in any event "at the times herein fixed for the payment of the several installments of rent," are not necessarily before us for decision on this appeal, and for that reason we make no determination of such conflicting claims.

Gibson, C. J., and Traynor, J., concurred.

Appellant's petition for a rehearing was denied May 29, 1944.