[Civ. No. 22672.   Second Dist., Div. One.   Apr. 18, 1958.]

C. O. SPARKS, INC. (a Corporation) et al., Respondents, v. PACIFIC COAST PAVING COMPANY, INC. (a Corporation) et al., Defendants; MALVEN AND NICK-LAS, INC. (a Corporation) et al., Appellants.

John F. Reed, Francis M. Reiter, Anderson, McPharlin & Conners and Robert C. Haase, Jr., for Appellants.

Herbert Gall, John U. Gall and Edward Fitzpatrick for Respondents.

FOURT, J.—This is an appeal from a judgment in favor of the plaintiffs and against Malven and Nicklas, a corporation, as a prime contractor, and against United Pacific Insurance Company, a corporation, as surety, under a private works contract.

On March 22, 1954, Malven and Nicklas, a corporation, hereinafter referred to as "the contractor," entered into a contract with Bramwell Construction Company, a California corporation, hereinafter referred to as "the owner," a division of Safeways Stores, Inc., a corporation, organized under the laws of Maryland, for the construction of a store building, including certain paving of a parking lot.

Paragraph one of the contract reads as follows:

"First: Contractor agrees, at the expense of contractor, to comply with all laws, ordinances and regulations, to obtain and pay for all permits and licenses except the general building permit which will be obtained and paid for by owner, *to furnish and pay for all of the labor, tools, and for all*

*appliance,* equipment and materials except such appliance, equipment and materials which the specifications provide are to be furnished by owner, and to pay all sales taxes and other taxes thereon, and *to perform all work,* or, to engage and pay subcontractors to perform such work, required under the plans, general conditions and blueprints hereinafter referred to, and addenda thereto, and/or required for the proper completion of the work hereinafter described." (Emphasis added.)

Paragraph eleven of the contract is as follows:

"Contractor agrees to furnish to owner, at contractor's expense and prior to the time contractor commences work under this contract, a bond in the sum of $239,376 written by a surety company satisfactory to owner, *guaranteeing and conditioned for the full, complete and faithful performance of this contract* by contractor and *for the payment in full of all claims and/or liens for labor* performed or materials furnished in connection herewith. Such bond shall be in a form satisfactory to owner and *shall include a clause making it applicable to the use and benefit of all persons who perform labor or furnish material in connection herewith."* (Emphasis added.)

On April 5, 1954, pursuant to the contract, the contractor executed a bond as principal, with United Pacific Insurance Company, hereinafter referred to as "the surety," in the sum of $239,376. The bond, in part, reads as follows:

"Whereas, the Principal has by means of a written Agreement, dated March 22, 1954 entered into a contract with the Owner for Construction of a Retail Store Building, Parking Lot and Related Improvements at 1355 South Avalon, Wilmington, California, a copy of which Agreement is by reference made a part hereof;

"Now Therefore, the condition of this Obligation is such that, if the Principal shall faithfully perform the Contract on his part and shall fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of failure so to do and shall fully reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any such default,

"and further, that if the Principal shall pay all persons who have contracts directly with the Principal for labor or materials, failing which such persons shall have a direct right of action against the Principal and Surety under this Obligation, subject to the Owner's priority,

"then this Obligation shall be null and void, otherwise it shall remain in full force and effect."

On May 4, 1954, the contractor entered into a subcontract with Pacific Coast Paving Company, Inc., hereinafter referred to as "the paving company," wherein the paving company was to do certain grading and improvements and furnish certain materials, all called for in the contract between the owner and the contractor.

On or about August 26, 1954, the paving company entered into an oral contract with the plaintiffs to, and the plaintiffs did, furnish certain materials, labor and use of equipment in connection with the performance of the subcontract.

The plaintiffs were never paid for their work, materials and equipment, although the contractor did pay the paving company and did secure a release from the paving company stating in substance that the paving company had paid all bills incurred by it in connection with the subcontract. Based upon the release the contractor paid the paving company the balance of its contract price for the work.

The plaintiffs brought the action to recover the amount unpaid to them by the paving company on the theory that they were third party beneficiaries within the terms of the prime contract and the bond. The cause went to trial on the second amended complaint which set forth, among other things, a copy of the contract and of the bond in full, and alleged that the contract and the bond were made for the benefit of third persons furnishing labor and material on the work called for in the contract, including among others the plaintiffs. It further alleged that the plaintiffs furnished work, materials and equipment in connection with the contract and were not paid, and that the reasonable value of their work, materials and equipment was $6,498.50. Judgment was in favor of the plaintiffs, against the contractor and against the surety.

The contractor contends that the amended complaint does not state a cause of action; that the contract between the contractor and the owner was an agreement to furnish a bond or agreement to pay third persons; that the bond and the contract must be read together; that the bond is a statutory bond and sufficed under the circumstances, and that the plaintiffs were covered under the bond.

The surety contends that its liability was restricted and did not cover the plaintiffs and no cause of action was conferred upon them, and further that where the terms of the

bond and the contract conflict the terms of the bond should control.

A reading of the complaint convinces us that a cause of action was properly stated. (See *Woodhead Lumber Co.* v. *E. G. Niemann Investments*, 99 Cal.App. 456 [278 P. 913]; *Shell* v. *Schmidt*, 126 Cal.App.2d 279 [272 P.2d 82]; *W. P. Fuller & Co.* v. *Alturas School District*, 28 Cal.App. 609 [153 P. 743]; *Sunset Lumber Co.* v. *Smith*, 91 Cal.App. 746 [267 P. 738]; *Pacific States Electric Co.* v. *United States Fidelity & Guaranty Co.*, 109 Cal.App. 691 [293 P. 812].)

A reading of the provisions of the contract indicate that the contract called for a bond "guaranteeing and conditioned for the full, complete and faithful performance of this contract by contractor and for the payment in full of all claims and/or liens for labor performed or materials furnished in connection herewith," and that the contractor agreed to "pay for all of the labor, tools, and for all appliance, equipment and materials . . . required for the proper completion of the work hereinafter described." In other words, the contractor agreed to pay third party persons who supplied materials.

The bond which was furnished in this case incorporated the contract therein, and thereby all of the provisions of the contract became provisions of the bond as a performance bond. (*W. P. Fuller & Co.* v. *Alturas School District, supra*; *Sunset Lumber Co.* v. *Smith, supra*; *Pacific States Electric Co.* v. *United States Fidelity & Guaranty Co., supra*.)

It was appropriately said in *Pacific States Electric Co.* v. *United States Fidelity & Guaranty Co., supra*, 109 Cal.App. 691, at pages 693-694 [293 P. 812]:

"A bond which is given for the faithful performance of a contract, to which it refers, binds the surety for labor performed and materials furnished thereunder as completely as though the surety were a party to the contract. (Citing cases.)

In the case last cited [*Ryan* v. *Shannahan*, 209 Cal. 98 (285 P. 1045)] it is said: 'It is also elementary that a bond given to guarantee the execution of a contract according to its terms becomes a part of such contract, and to that contract the sureties become parties the same as though they had actually made and executed the contract itself. Therefore, in interpreting the language of the undertaking for the purpose of gathering its scope or the measure of the liability of the sureties, we must do so by treating or viewing the contract and the undertaking as a whole or as constituting an indivisible contract.' "

Surely it meant, in this particular case, that the contractor was to furnish the materials and was to pay for them, and it was not meant that he could engage a subcontractor who would secure the materials and perform the work and then neglect or refuse to pay for such, and leave the plaintiffs here to stand the loss.

Had the surety desired to make it otherwise, and to have limited and restricted liability to certain specific persons and no others, it would have been a simple matter to have so stated in the bond in unequivocal language. However, in this particular case, had there been any such express limitations the bond undoubtedly would not have been acceptable to the owner who manifestly was interested in seeing to it that all of those who performed work and labor on its building and works were going to be paid.

The bond in this case was a common law bond and not one in conformity with the provisions of section 1185.1, Code of Civil Procedure. The contract was filed with the County Recorder, but the bond was not so filed.

A common law undertaking which is furnished to a general contractor for the faithful performance of an agreement with the subcontractor for the supplying of labor and materials for a structure is not a pledge for the sole benefit of the general contractor, but inures to the benefit of any person who performs labor or furnishes materials which are used in the structure, pursuant to the provisions of the subcontract. (*Sunset Lumber Co.* v. *Smith, supra,* p. 751; *W. P. Fuller & Co.* v. *Alturas School District, supra,* p. 613.)

We find no prejudicial error.

Judgment affirmed.

White, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied May 13, 1958, and the petition of appellant United Pacific Insurance Company for a hearing by the Supreme Court was denied June 17, 1958.