[Civ. No. 11155. Third Dist. July 13, 1966.]

CLINT GORDY, Plaintiff and Appellant, v. UNITED PACIFIC INSURANCE GROUP, Defendant and Respondent.

James E. Pardee and Elden C. Friel for Plaintiff and Appellant.

Maloney, Chase, Fisher & Hurst and Michael E. Myers for Defendant and Respondent.

REGAN, J.—Plaintiff Clint Gordy brought this action for money allegedly due him under an oral contract which provided, in addition to wages, that he would receive a payment of 1 percent of a bid price submitted by his employer, York-Chico.

Johnson, Drake and Piper were prime contractors to con-

struct a conservation center for the State of California. The prime contractors furnished a statutory bond issued by Continental Casualty Company pursuant to the provisions of sections 4200 to 4210 of the Government Code. Hickman Bros., a subcontractor, in turn gave a subcontract to York-Chico which supplied a bond furnished by United Pacific Insurance Company (incorrectly sued herein as United Pacific Insurance Group), defendant herein.

York-Chico became a bankrupt when its subcontract was 80 to 85 percent completed and the remainder of its contract was performed by other parties who received payment from defendant. Gordy was paid his wages only by defendant and sues for the percentage payment.

The statutory bond furnished by the prime contractor is both a performance and labor and material bond, and it inures to the benefit of all persons entitled to file claims or their assigns. (Gov. Code, § 4205.)

Oral testimony established that the bond furnished by defendant to York-Chico was required by York-Chico's subcontract. This subcontract was not offered in evidence. This bond reads in part:

"THE CONDITION OF THIS OBLIGATION IS SUCH THAT,

"WHEREAS, said Principal on the 19th day of September, 1960, entered into a written subcontract, hereto attached with the said Obligee [Hickman Bros.] for all heating, ventilating and refrigeration work on the Main Building Group, California Conservation Center, Lassen County, California Project. . . .

". . . if the Principal shall well and truly *perform* and fulfill within the time specified, all the undertakings, covenants, terms, conditions and agreements of said subcontract, and all modifications that may hereafter be made thereto, notice of which modifications to the surety being hereby waived; *and further,* if the Principal shall *pay* and fully satisfy all obligations for material, equipment, labor, taxes, insurance, and all other things required in the prosecution of the work subcontracted, then this obligation to be void, otherwise to remain in full force and virtue." (Italics added.)

The court, after a trial without a jury, found: That Gordy in addition to his regular salary was to receive 1 percent of York-Chico's bid as additional compensation, which amounted to $4,150 if the job had been completed by York-Chico; that when York-Chico became bankrupt 80 to 85 percent of the work upon which Gordy was to have been paid the 1 percent

had been completed; that the prime contractor provided a labor and material bond for the benefit of all laborers and materialmen on the entire conservation center job; that Hickman Bros. required York-Chico to furnish a faithful performance bond and such a bond was made by defendant United Pacific Insurance Company; that the bond furnished by York-Chico names Hickman Bros. as the only obligee, does not provide laborers or materialmen employed or contracted by York-Chico a direct right of action on its bond; that Gordy had a direct right of action on the prime contractor's bond, but the York-Chico bond was only for the protection of Hickman Bros. and did not inure to the benefit of Gordy. Judgment was given for defendant United Pacific Insurance Company.

 We hold defendant's bond to be both a performance and payment bond for labor and materials furnished and to inure to the benefit of Gordy.

 It is axiomatic that when a bond refers to a contract in such terms as to incorporate it within the bond, its construction is determined by viewing both the contract and the bond. (*Verdugo Highlands, Inc.* v. *Security Ins. Co.*, 240 Cal.App.2d 527, 530-531 [49 Cal.Rptr. 736]; *Roberts* v. *Security Trust & Sav. Bank*, 196 Cal. 557, 566 [238 P. 673].) Since the subcontract between Hickman Bros. and York-Chico was not entered into evidence and is not before us, we must interpret only the bond itself.

 The bond clearly is a common law undertaking furnished to the subcontractor Hickman Bros. by the subcontractor York-Chico for the faithful performance of its contract. By stating that York-Chico agreed to do ''all heating, ventilating and refrigeration work on the Main Building Group,'' the bond infers that this would include the purchasing of the materials and the use of workmen to install them. The bond also states that the principal is to ''satisfy all obligations for material, equipment, labor, . . .'' This language is unambiguous in stating this bond to be for the benefit of laborers. The evidence is uncontradicted to the effect that, in fact, all materials for its portion of the work, and the laborers to install them, were furnished by York-Chico. We feel this to be determinative of the primary issue before us.

 ''A common law undertaking which is furnished to a general contractor for the faithful performance of an agreement with the subcontractor for the supplying of labor and materials for a structure is not a pledge for the sole benefit of

the general contractor, but inures to the benefit of any person who performs labor or furnishes materials which are used in the structure, pursuant to the provisions of the subcontract. [Citations.]'' (*C. O. Sparks, Inc.* v. *Pacific Coast Paving Co.,* 159 Cal.App.2d 513, 518 [324 P.2d 293]; see also 77 A.L.R. 53.) In *Pacific States Electric Co.* v. *United States Fidelity & Guaranty Co.,* 109 Cal.App. 691, 694-695 [293 P. 812], the same result was reached. The court said: ''The obligation of the respondent in the present cases to guarantee payment for labor performed and materials furnished under the subcontract seems fixed and certain. The fact that these claimants may have been entitled to recover compensation from the original general surety, Metropolitan Casualty Insurance Company, does not release the respondent from the clear obligations of its contract. In the event of securing judgments against the original general surety by the claimant in this action, it would then be entitled to be subrogated to all the rights of these plaintiffs for the purpose of reimbursement, which would include the right to resort to respondent's bond to satisfy their claims. [Citations.]''

Defendant contends that the trial court's findings in its favor are binding on this court because they are reasonable.

■ ''The interpretation of a written instrument, even though it involves what might properly be called questions of fact (see Thayer, Preliminary Treatise on Evidence, pp. 202-204), is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635-1661; Code Civ. Proc., §§ 1856-1866.) . . . .

■ ''It is true that cases have said that even in the absence of extrinsic evidence the trial court's interpretation of a written instrument must be accepted 'if such interpretation is reasonable, or if [it] is one of two or more reasonable constructions of the instrument' [Citations] . . . . Such statements . . . [should be interpreted] to mean only that an appellate court must determine that the trial court's interpretation is erroneous before it may properly reverse a judgment. [Citation.] They do not mean that the appellate court is absolved of its duty to interpret the instrument.'' (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].) Defendant's contention is without merit because the only instrument to be interpreted is the bond

itself, and we have held the trial court's interpretation to be incorrect.

The judgment is reversed with directions to the trial court to ascertain the amount of additional compensation to which Gordy is entitled and then to enter judgment for Gordy in the amount so determined.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied August 12, 1966, and respondent's petition for a hearing by the Supreme Court was denied September 7, 1966.